## DAYTON STREET TRANSIT CO v DAYTON POWER & LIGHT CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1469. Decided Dec 23, 1937

Philip H. Worman, Dayton, Paul H. Blum, Dayton, for plaintiff-appellant.

Edwin P. Matthews, Dayton, and Charles P. Pfarrer, Dayton, for defendant-appellee.

**OPINION**

By GEIGER, J.

This case had its origin in the Court of Common Pleas of Montgomery County, Ohio, resulting in a finding of the court sustaining the demurrer of the defendant, filed on the ground that the court has no jurisdiction of the subject of this action and because said amended petition does not state facts to show a cause of action. Court further states in its entry that being of the opinion and finding that the defects in the first amended petition and apparent on the face thereof, can not be remedied by amendment, the court dissolves the temporary restraining order and dismisses this case. The plaintiff below excepted to all findings of the court and gave notice of an appeal to the Court of Appeals from the final order rendered by the Court of Common Pleas on the 22nd day of June, 1937. Said appeal is on questions of law.

Parties will be referred to herein as they stood in the court below. Upon the filing of the original petition the defendant moved to strike out numerous allegations, which motion was sustained and the plaintiff filed an amended petition which the court now considers on the question of whether the same is demurrable.

We summarize the petition as follows:

It is alleged that the Dayton Street Car Company is a corporation qualified as a public carrier and that the defendant, The Dayton Power and Light Company is a corporation generating electrical energy for sale; that on January 2, 1923, the two corporations contracted, in writing, for the defendant to sell and the plaintiff to buy electrical energy in accordance with the terms of said contract; that said contract expired on January 1, 1933 and that there has been no formal renewal thereof nor has a new contract been entered into, although the defendant continues to deliver electrical energy to the plaintiff.

Plaintiff recites that in 1932 it discontinued the operation of electric street cars and installed a system of electric trolley cars, known as trackless or railless trolleys; that as an incident to said operation dual overhead electric trolley wires were installed to replace the single wire system as utilized for the operation of electric street cars: that the defendant had full knowledge of the inauguration of the new system and as a seller of electrical energy is now obligated to furnish said power in an adequate and proper manner without undue expense or unreasonable outlay to the plaintiff in the use and cost of said power; that said plaintiff has continued to purchase power from the defendant for the operation of the new system and that all bills for the same were paid promptly as submitted, but that on or about the 15th of December, 1934, without warning, the defendants submitted a bill for power allegedly consumed involving a large increase in excess of previous months and in excess of the same month for the year previous and in excess of the amount required for plaintiff's needs; that the plaintiff caused a survey of its system to be made, which developed no leaks or other causes to account for the condition and that during the course of the investigation the plaintiff paid to the defendant monthly amounts remitted as payment upon the account of the adjusted amount, when the same might be agreed upon, which accumu-

lated deferred sum now amounts to $5,-321.04

Plaintiff says that on the 11th day of June, 1936, it was visited by the agent of the defendant and informed that unless arrangements were made on the 16th of June, 1936, for the payment of the disputed amount said defendant would discontinue service to the plaintiff.

Plaintiff says that the defendant is the sole source of supply of electrical energy and that in the short period of time allowed, electrical energy from another source could not be procured; that if defendant refuses to supply it with electrical energy as it has threatened to do, the plaintiff will be unable to fulfill its franchise obligations to the City of Dayton, which will lead to great inconvenience of a large number of people and that in addition it will suffer the loss of its daily receipts for an unknown period of time, all to its irreparable damage; that the plaintiff is without adequate remedy at law to protect its rights; plaintiff says that due to the foregoing conditions and the failure of defendant to remedy the same, the plaintiff is compelled to pay to defendant for power it consumes a sum greatly in excess of defendant's published rates.

The plaintiff prays that the public's rights be protected; that a temporary restraining order be issued restraining defendant from interfering with the operation of the plaintiff's public transportation system either by refusing to furnish current or otherwise and that upon hearing, defendant may be permanently restrained.

As a further prayer the plaintiff asks that the court declare whether or not any contractual relationship exists between the plaintiff and the defendant and that if such relationship is found to exist, that the court declare all duties and obligations resulting from said contract to be performed by both the plaintiff and the defendant and that the court declare the cause of the excessive increase and charges made for electrical current by the defendant against the plaintiff and declare whether the plaintiff or the defendant is responsible for the excessive charge by the defendant against the plaintiff and for other proper relief.

As stated before, to this amended petition, a demurrer was filed and sustained. The gist of the petition is a complaint alleging that under a prior contract, now expired, the defendant furnished energy to the plaintiff's then existing street car system; that the plaintiff has discarded the old system and installed the new railless trolley: that for some reason unknown to the plaintiff and undiscoverable, the bills furnished by the defendant are in excess of those heretofore rendered and that the plaintiff has reserved the payment of such increase for further adjustment and that the defendant has notified the plaintiff that unless this reserve amount be paid and the current bills paid as rendered, it will cease service to the detriment of the public and of the plaintiff. A declaratory judgment is asked of the court.

The plaintiff and defendant have both filed elaborate briefs, which we have carefully examined.

## MOTION TO STRIKE OUT

The defendant moved to strike certain matters from the petition as immaterial and redundant, classifying the same under ten different paragraphs. This motion was sustained in practically its entirety. We do not consider it profitable to comment in detail upon the matter sought to be stricken out in the action of the court in sustaining the motion. Suffice it to say, we have carefully examined the motion and are of the opinion that the court was not in error in sustaining the same on the ground that they were redundant and irrelevant. Our further examination of this case may disclose other considerations which might determine the correctness of the court's action than that the matters sought to be stricken were redundant and irrelevant.

## PLAINTIFF'S BRIEF

Without commenting upon this brief in detail, we may point out the highlights thereof. First it is maintained that there never was and is not now any question or objection to the unit charge for the excessive kilowatt hours. It is only by the application of the rates to the actual increase in kilowatt hours that dollars and cents are involved and that the first question becomes, "What is the contractual relationship between the parties?" It is queried that "If the excessive electrical energy is due to some engineering cause, then on what contractual relationship can the responsibility therefor be placed?"

It is asserted that these questions were never disposed of by either party and that during the period of conferences, the de-

fendant repudiated the last formal contract and yet relied on some of the terms thereof.

It is pointed out that the defendant, at the time of the filing of the petition, requested a declaratory judgment of the relationship between the parties. It is maintained the rate feature was first injected by the defendant in its brief on demurrer. The brief then takes up the question of the motion to strike, which we have already passed upon.

## DEFENDANT'S DEMURRER

It is claimed by the plaintiff first, that the grounds upon which the petition is assailed as demurrable do not appear upon the face of the petition and that it does not appear that there is any repudiation of the rate or any attempt to revise the same or any claim that it is unjust or in any way in dispute. It is admitted that power to fix rates is exclusively in the Public Utilities Commission of Ohio as is also the decision as to whether or not a rate is reasonable, but that the only matter involved in the petition is contractual rights. Counsel then cite a number of holdings of the Commission and of the Supreme Court to the effect that the matter of contractual rights was within the jurisdiction of the court. Counsel then comments upon §12102-1 GC of the Uniform Declaratory Judgments Act and asserts that the matter between the parties is within the declaratory judgment powers of the court and the claim is made that the court erred in sustaining the motion to strike and sustaining the demurrer; that an adequate application for a declaratory judgment is made by the face of the petition and is within the jurisdiction of the Common Pleas Court.

Counsel for defendant filed an interesting and extensive brief, the substance of which is that all the matters of the controversy are properly within the jurisdiction of the Public Utilities Commission.

## DECLARATORY JUDGMENTS

The statutes relating to declaratory judgments provide that courts of record **within their respective jurisdictions** shall have power to declare rights and legal relations; that a person interested under a written contract or other writings constituting a contract or whose rights are affected by statute, municipal ordinances, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, etc., and obtain a declaration of the rights, status and other relations thereunder and that the enumeration in certain sections does not limit or restrict the exercise of the general power conferred in §1, in any proceeding where a declaratory relief is sought in **which a judgment or decree will terminate the controversy or remove an uncertainty;** that the court may refuse to render a declaratory judgment where such judgment, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding. The application therefor shall be by petition to a court **having jurisdiction** to grant the relief.

Our first comment is that courts of record within their respective jurisdiction, shall have power to render a declaratory judgment and that the application therefor shall be by petition in a court having jurisdiction to grant the relief.

We are of the opinion that "within their respective jurisdictions" does not relate solely to territorial jurisdiction but to matters over which the court to which the application is made has jurisdiction irrespective of its geographical location and the provision that the application shall be to a court having jurisdiction to grant the relief draws into question the jurisdictional power, whether territorial or otherwise, of the court. A proper declaratory judgment should terminate the controversy and remove an uncertainty.

It will readily be perceived that if the court determines that the Court of Common Pleas of Montgomery County, had no jurisdiction of the matter presented by the petition, that it has no power to render a declaratory judgment and further that if it has no such jurisdiction originally, any error it may have committed in sustaining a motion to strike certain matters from the petition is not prejudicial to the plaintiff.

We have no difficulty in disposing of the first and second paragraphs of the prayer of plaintiff's petition asking that the court declare whether or not any contractual relationship exists and, if it does, to declare the obligations resulting from said con-

tract to be performed by both plaintiff and defendant.

The petition states that on or about January 2, 1923, the defendant contracted in writing for the defendant to sell and the plaintiff to buy electrical energy; that said contract expired on January 1, 1933 and that there has been no formal renewal of the same nor has any new contract been created. This is a declaration by the plaintiff that the contract formerly existing has expired and not been renewed and this declaration seems to us effectual in determining adversely to the plaintiff his right to have the court declare whether any contractual relationship exists and to declare the obligations of each, resulting from such non-existing contract.

It is perfectly true that under the Public Utility Code, there is a contract upon the part of the defendant to furnish power to the plaintiff in accordance with its filed and approved schedule and likewise a contract upon the part of the plaintiff to pay for the same but it could scarcely be asserted that, under the petition as framed, there is any right in the court to make a declaratory judgment as to the existence of such statutory contract or the rights of the parties thereunder. Such matters are exclusively within the jurisdiction of the Public Utility Act. This would leave another question and that is whether or not the Court of Common Pleas, having before it no existing contract, except so far as the same may be inferred from the fact that both parties are public utilities, and not having authority to pass upon the statutory contract existing by virtue of the Public Utility Act in the filing of the defendant's schedule, could, upon the allegation that the defendant threatens to and will, unless restrained, deprive the plaintiff of the necessary power to the detriment of the public and the defendant, exercise jurisdiction to restrain the defendant.

We do not feel called upon to pass upon the question as to whether the Court of Common Pleas would have jurisdiction to issue an injunction under such circumstances, nor do we think it of importance at this time, as power is now being furnished and there is no present threat by the power company to withhold it.

## PUBLIC UTILITIES ACT

In order to determine whether the Public Utilities Act gives exclusive control of these matters to the Public Utility Commission, we must examine the controlling statutes. The entire enactment is embraced within §§487 to 614-128 GC.

Sec 487 GC provides that the Commission shall possess the powers and duties specified as well as all powers necessary and proper to carry out the purposes of this chapter.

The act is made up of sections which formerly were applicable to the Public Service Commission and the Railway Commission and it is provided that the Public Utility Commission is authorized to assume and continue as successor of the Public Service Commission.

Sec 614-2 GC gives appropriate definitions, among which is the following:

When engaged in the business of supplying electricity for light, heat or power purposes to consumers within this State, is an electric light company.

Sec 614-2a GC provides that a public utility shall mean every corporation defined in the next preceding section with certain exceptions, not here applicable.

It is therefore clear that the defendant is a public utility.

Sec 614-3 GC provides that the Public Utility Commission of Ohio is vested with power and jurisdiction to supervise and regulate "public utilities" and to require all public utilities to furnish and produce and render all services exacted by the Commission or by law.

Sec 614-13 GC provides that every public utility shall furnish with respect to its business, such instruments as shall be adequate and in all respects just and reasonable and that all charges made or demanded for any service rendered shall be just and reasonable and not more than allowed by law or by order of the Commission. Every unjust and unreasonable charge made or demanded for any service or in connection therewith or in excess of that allowed by law or by order of the Commission is prohibited and declared to be unlawful.

Sec 614-18 GC provides that no public utility shall charge, demand or receive a different rate for any service rendered than that applicable to such service as specified in its schedule and regularly and uniformly extended to all persons under like circumstances and for like service.

Sec 614-21 GC provides upon complaint in writing against any public utility or up-

on the initiative of the Commission that any rate or charge is unjust or that any regulation, measurement or pracice affecting or relating to any service furnished by such public utility or in connection therewith is, or will be, in any respect unreasonable or inadequate, the Commission shall notify the utility of the complaint and the Commission shall, if it appear that there are reasonable grounds for the complaint, proceed to consider such complaint.

Sec 614-23 GC provides that whenever the Commission shall be of the opinion that any rate, schedule or service is unjust or the service inadequate it shall fix new rates.

Sec 614-27 GC provides whenever the Commission shall be of the opinion that the rules, regulations, measurements or practices of any public utility, with respect to public service, are unjust or unreasonable or that the equipment is inadequate or inefficient, it shall determine the regulations and practices and services thereafter to be installed, used and rendered and fix and prescribe the same by order to be served upon the public utility and that it shall thereafter be the duty of the utility to obey the same and do everything necessary to carry the same into effect.

Sec 614-28 GC provides that whenever the commission shall be of the opinion that repairs or improvements and additions to the plant or equipment of any utility should reasonably be made in order to promote the convenience or welfare of the public or in order to secure adequate service, the commission may make appropriate orders with respect thereto.

Sec 614-36 GC provides that the commission may ascertain and fix adequate and serviceable standards for the measurements of quality, pressure, initial voltage or other conditions pertaining to the supply or quality to the product or service rendered by any public utility and prescribe reasonable regulations for examination and testing of such product or service and for the measurement thereof and to establish reasonable rules and standards to secure the accuracy of all meters and appliances of measurement and every utiltiy is required to carry into effect all orders issued by the commission relative thereto.

Sec 614-37 GC provides that the commission may provide instruments for and carry on the examination and testing of any appliance used for measurement of any product of a public utility.

Secs 544 and 545 GC provide for an appeal and reversal of the order of the Commission by the Supreme Court and §549 GC provides that no court other than the Supreme Court shall have the power to review an order of the Commission or to interfere with the Commission in the performance of its duties..

The statutes above referred to and others in the public utility chapter clearly demonstrate that the Public ▮▮▮ ▮ Utility Commission has full plenary and, we believe, exclusive jurisdiction of all questions relating to the matters referred to in the statutes.

The Public Utility Commission is established for the purpose of exercising exclusive jurisdiction over public utilities and their service to the public and may make such orders as to it may seem appropriate, effecting the entire scope of operation of the utilities and their service to the public.

If we examine the petition in this case, we find that all matters complained of can be adequately reached in the Public Utility Commission and it is quite evident that there was the legislative intention that it should have exclusive jurisdiction in these matters. Were it not so, the local courts would be clogged with public utility controversies. The Commission has adequate engineering and accounting facilities to examine the controversy here set up and arrive at a proper conclusion, to be incorporated in an order of the Commission from which order appeal may be taken directly to the Supreme Court.

We are, therefore, of the opinion that the Common Pleas Court of Montgomery County has no jurisdiction in this matter and that if it erroneously sustained a motion to strike, such order is not prejudicial error for the reason that there was no jurisdiction to make the order. The court below, in its opinion, correctly and concisely stated our position.

Demurrer sustained and cause remanded for final disposition in accordance with the judgment below.

BARNES, PJ, and HORNBECK, J, concur.