THE STANDARD OIL COMPANY, APPELLEE, *v.* CITY OF WARRENSVILLE HEIGHTS, ET AL., APPELLANTS.

2

(No. 34272—Decided April 8, 1976.)

*Messrs. Squire, Sanders & Dempsey, Mr. James A. Smith* and *Mr. James P. Murphy,* for appellee.

*Messrs. Mandanici, Domiano, Easa, Nuccio & Simon,* for appellants.

KRENZLER, C. J. On December 14, 1972 the plaintiff-appellee, The Standard Oil Company, hereinafter referred to as the appellee, filed an action entitled a "Complaint for Declaratory Judgment and Other Relief" in the Cuyahoga County Common Pleas Court against the defendants-appellants, the city of Warrensville Heights and its building commissioner, Michael J. Patrick, hereinafter referred to as the appellants. In its complaint the appellee alleged that it was an Ohio corporation; that Warrensville Heights was an Ohio municipal corporation; that Michael J. Patrick was the duly employed and acting building commissioner of Warrensville Heights; that it was the owner of a parcel of real estate located at the southwest corner of the intersection of Sumpter and Warrensville Center Roads in the city; and that it was the purchaser, subject to the issuance of all necessary building and occupancy permits, of certain parcels of realty known as 4936 Warrensville Center Road, 4940 Warrensville Center Road, and 4916 Warrensville Center Road in the city of Warrensville Heights. The appellee further alleged that in the vicinity of the above four parcels Warrensville Center Road was a major north-south thoroughfare accommodating heavy traffic; that currently under construction immediately to the south of the four parcels was Interstate Highway 480, a limited access interstate highway traversing the city from east to west; that the four parcels were situated adjacent to the westbound entrance ramp to the highway and constituted all realty fronting on the west side of Warrensville Center Road from the highway property north to Sumpter Road; and that in the immediate vicinity of the four parcels, both north and south along Warrensville Center Road, were all manner of retail, commercial and business uses attracting or servicing a high volume of vehicular traffic, including a Sun Oil Company automotive service station and a

4

Heinen's warehouse on the east side of Warrensville Center Road within close proximity of the premises. The appellee then alleged that under the city of Warrensville Heights' Planning and Zoning Code the four parcels were designated "Class U-1" or "Single-Family Use District;" that it sought to construct and operate an automotive service station on the parcels; that it had applied to the city for a rezoning of the four parcels from a class U-1 use district to a class U-4 use district (Local Retail Store), but that such request was refused; that on July 24, 1972 it filed an application with the building commissioner for all necessary permits for the construction, use and occupancy on the four parcels of an automotive service station, but that to date the appellants had not acted upon the application; that it had exhausted all legislative and administrative remedies available to it and had no adequate remedy at law; that by reason of the heavy volume of commercial traffic on Warrensville Center Road past the parcels, the dirt, dust and noise generated by said traffic, the close proximity to the parcels of retail, commercial and business uses attracting or servicing vehicular traffic, and in view of the construction of a major east-west interstate highway and entrance ramp thereto immediately south of the parcels, the four parcels were not useful or marketable for single-family residence purposes; and that to prevent it from using the parcels for the construction and use of an automotive service station denied it equal protection of law and deprived it of property rights without due process of law, in violation of the United States and Ohio Constitutions.

The appellee concluded its complaint by praying that the Common Pleas Court adjudge and declare that the single-family use only restriction imposed by the Warrensville Heights Planning and Zoning Code on the parcels was unconstitutional and void; adjudge and declare that it was entitled to construct, use and occupy an automotive service station on the parcels; issue a mandatory injunction against the city of Warrensville Heights and its building commissioner to forthwith issue to it the necessary permits for construction, use and occupancy of an auto-

motive service station on the parcels; and grant such other relief as would be just and equitable.

On January 22, 1973 the appellants filed a joint answer to the appellee's complaint for declaratory judgment. In their answer the appellants admitted some of the appellee's allegations, including the allegations that the parcels were zoned for single-family use only and that the appellee wanted to build a gasoline station upon them, but denied all the appellee's assertions that would have entitled it to the relief it had requested.

The case came on for trial in the Common Pleas Court on October 2, 1974. At the outset the parties caused a number of stipulations to be entered into the record. Key among these stipulations were the parties' agreements that the appellee had applied to the city for a rezoning of the four parcels from a single-family to a retail use but that the Warrensville Heights City Council had rejected a proposed rezoning ordinance; that on August 28, 1972 the appellee had filed an application with the appellant building commissioner for permits for construction, use and occupancy of the parcels as a service station, but that the building commissioner had not formally responded to that application; and that the appellee had not appealed to the Warrensville Heights Board of Zoning Appeals from the failure of the building commissioner to act on the application, nor had the appellee appealed to said board for exceptions to or for variances from the present single-family zoning ordinance with respect to the proposed service station use.

After the stipulations were entered into the record, the appellants made an oral motion to dismiss the action on the ground that the court had no jurisdiction to entertain it because the appellee had not first exhausted its administrative remedies. The court heard arguments from both sides and then reserved ruling upon the motion until after the parties had submitted briefs on the issue. The court then proceeded to hear the evidence in the case.

The appellee presented five witnesses in support of its position that the parcels were unconstitutionally zoned

for single-family use only purposes. A summary of the testimony of four of the witnesses is as follows. Witness Wendell Phillips, Jr. testified that he was president of Phillips Planning Associates, Inc., a planning consulting firm; that he made a map indicating the various land uses existing in the Warrensville Center Road-I-480 vicinity; and that the map indicated that commercial and industrial uses existed generally in the area. Mr. Phillips further testified that in his expert opinion as a planning consultant, given the configuration of the thoroughfares in the Warrensville Center-I-480 area, the intersection of the new interstate highway, and the configuration of the land adjacent to that intersection, that a site in this location would generally be a site useful for commercial purposes and not a site suitable for residential uses. Phillips also stated that the construction of another service station in the area (several were already there) would have a minimal adverse effect on the neighborhood and that any truly adverse effects had already occurred because of the construction of I-480.

Witness William T. Jackman testified that he was a self-employed traffic engineering consultant; that in his expert opinion the parcels in question, at the northwest corner of the intersection of Warrensville Center Road and I-480, were ideally suited from traffic safety and traffic flow standpoints for service station use; and that in his opinion the parcels were not suitable from traffic safety and traffic control points of view for residential use. Witness Jackman cited, in giving reasons for his opinion, that the parcels were not suitable for residential use, the problem of children being near such a heavily-traveled highway (Warrensville Center Road) and the problem of cars backing out of driveways onto such a main artery.

Witness Chris Markos testified that he was an independent fee appraiser; that the neighborhood in which the parcels in question were located had suffered serious disruptive changes due to proximity to an entrance ramp to I-480; and that the parcels constituted an isolated island of residential property on Warrensville Center Road. Wit-

ness Markos also stated that in his expert opinion the three homes presently on the parcels did not constitute desirable residential property.

Witness Thomas W. Foliano testified that he had resided in the middle home of the three homes located on the subject parcels from 1965 through 1973; that at one time there were eighteen to twenty homes along Warrensville Center Road in the vicinity but that none of such homes remained at present; and that traffic was the major problem when he lived in the middle home. Witness Foliano further testified that the area was plagued by noise and air pollution because of the traffic situation.

The appellants presented three witnesses in support of their position that the parcels were properly zoned for residential purposes. A summary of the testimony of the three witnesses is as follows.

Witness Tony Zito testified that he was the owner of property at 20203 Sumpter Road in the City of Warrensville Heights; that he had lived at this address for over thirteen years; and that his home was very near to the proposed location for the Standard Oil Service Station. Mr. Zito further testified that he was opposed to the construction of the gasoline station on the site in question for the reason that he wanted to see his area remain residential and for the further reason that he thought a commercial use in the area would adversely affect the value of his property.

Witness Michael J. Patrick testified that he was the building commissioner of Warrensville Heights and a defendant in the case; that he first became aware of the proposed construction and rezoning of the parcels in question for a service station in 1971; that he held the plans regarding the station in abeyance; and that he never wrote an acceptance or refusal from a request for rezoning and/or a building permit to anyone from Standard Oil.

Witness Michael Juratovac testified that he was a policeman with the Warrensville Heights Police Department; that his present duties required him to maintain traffic accident records; that he was familiar with both the

proposed Standard Oil site and the Sunoco service station across Warrensville Center Road and to the north of the Standard Oil site at the intersection of Warrensville Center and Aurora Roads; that the Sunoco station opened in August of 1970; that his records disclosed sixty-one reported accidents at the intersection of Warrensville Center and Aurora Roads by the Sunoco station since that station opened; that Warrensville Center Road was widened in 1973; that since the road was widened twelve accidents had occurred at the Sunoco intersection; and that five of those twelve accidents had been attributed to cars leaving the Sunoco property at the intersection. Officer Juratovac testified that all five accidents referred to above involved cars crossing the three northbound lanes of Warrensville Center Road to go southbound on Warrensville Center and that a driveway leading from the proposed gas station site to Warrensville Center near the entrance ramp to Interstate 480 would create the same dangerous situation as at the Sunoco location across the street and to the north.

On cross-examination Officer Juratovac admitted that he had no reports of accidents occurring as a result of traffic exiting from the Sunoco station and proceeding north on Warrensville Center but that the problems encountered had been with cars proceeding south and therefore cutting across three lanes of traffic.

By entry filed with the clerk for journalization on October 16, 1974 the Common Pleas Court overruled the appellants' motion to dismiss the declaratory judgment action. In an entry filed on November 18, 1974 the lower court rendered a decision whereby it found that Warrensville Heights, in not enacting the proposed rezoning ordinance sought by the appellee, had acted in an arbitrary, capricious, discriminatory and confiscatory manner, and further in a manner wholly unrelated to the public health, safety, morals, and welfare. The Common Pleas Court held that the Warrensville Heights Council's disapproval of the proposed rezoning ordinance was an invalid exercise of police power that both deprived the appellee of property without due process of law and deprived the appellee of the equal protection of the law. The court there-

fore adjudged and declared that the single-family use only restriction imposed by the Warrensville Heights Planning and Zoning Code on the four parcels in issue was unconstitutional and void; adjudged and declared that the appellee was entitled to construct, use and occupy a service station on the parcels; and issued a mandatory injunction against Warrensville Heights and its building commissioner to forthwith issue to the appellee the necessary permits for construction, use and occupancy of a gasoline station on the parcels.

On December 9, 1974 the appellants filed a timely notice of appeal and assigned three errors for this court's consideration:

"I. The judgment of the trial court dismissing defendants' motion to dismiss for lack of jurisdiction was contrary to law, in that plaintiff failed to exhaust its administrative remedies prior to the institution and maintenance of the within Declaratory Judgment action.

"II. The judgment of the trial court finding that the defendant-appellant in failing to rezone the property of plaintiff-appellee to a Local Retail District Use acted in an arbitrary, capricious, discriminatory and confiscatory manner, and further acted in a manner wholly unrelated to the public health, safety, morals and welfare, is against the manifest weight of the evidence and contrary to law.

"III. The judgment of the trial court declaring the zoning of the subject premises an invalid exercise of defendant's police power, prior to the exhaustion of all administrative remedies, is an unconstitutional judicial interference with defendant's legislative home rule powers."

Further, while the appeal was pending in this court, the appellants obtained leave to file an additional assignment of error, which reads as follows:

"IV. The judgment of the trial court is contrary to law and against the manifest weight of the evidence, in that appellants proved by a preponderance of the evidence its [sic] affirmative defense that appellee failed to exhaust its administrative remedies prior to initiating the within declaratory judgment action."

The foregoing four assignments of error raise two

particular issues: (1) whether the appellee exhausted its administrative remedies prior to initiating the declaratory judgment action; (2) if the appellee did exhaust its administrative remedies, and properly brought the declaratory judgment action, was the trial court correct in determining that the present zoning of the appellee's property for single-family use is arbitrary, confiscatory, discriminatory and not based on the public health, safety, morals and welfare and thus unconstitutional.

The appellants contend that the appellee did not exhaust its administrative remedies prior to initiating the present declaratory judgment action. The appellants argue that the appellee is premature in bringing this action because the building commissioner has not yet ruled on its application for a building permit, and further that if and when the building commissioner does rule on the application an appeal may be taken to the Warrensville Heights Board of Zoning Appeals and a non-conforming use variance sought. Necessarily, the appellants contend that the board of zoning appeals has the power to grant a non-conforming use variance which would permit the use of a gasoline station in a U-1 single-family district. Further, they argue that if the board denied a non-conforming use variance, the appellee could then take an appeal to the Common Pleas Court under the Appellate Procedure Act, R. C. Chapter 2506, and there raise the issue of abuse of discretion by the board of zoning appeals in not granting a non-conforming use variance, or, in the alternative, challenge the constitutionality of the single-family zoning of its property.

The appellee argues that the building commissioner does not have authority to issue a building permit for a service station because the property in question is in a U-1 zoning classification, single-family residence district, whereas a service station is in a U-4 zoning classification, local retail store district. The appellee also argues that it would be a vain act to seek a variance from the board of zoning appeals because the board does not have authority to grant a nonconforming use variance under Section 8(d)

of the Charter of Warrensville Heights. The appellee maintains that since the seeking of a non-conforming use variance would be unduly expensive and onerous, and also a vain act because the board of zoning appeals lacks authority to issue a non-conforming use variance, it properly was entitled to maintain the declaratory judgment action in this case without seeking administrative relief.

Because the appellee sought a legislative zoning change and also attempted to obtain some administrative action and finally initiated this declaratory judgment action, and since the foregoing events took in excess of three years, we will discuss some relevant areas of zoning to resolve the issues in this case and to clarify the law in order to avoid such needless multiplicity of acts, legislative, administrative and judicial, in a single case in the future.

Whenever a property owner wants to use his property for a particular use or purpose not provided for in the municipal zoning ordinances governing his property he has several alternatives. He may: (1) seek legislative rezoning; (2) seek rezoning by initiative petition and a vote of the people; (3) attack the constitutionality of the zoning by litigation; or (4) seek administrative relief from strict compliance with all of the terms of the zoning ordinances and regulations, such as by a variance.

The municipality involved also has several options available to it. It may either rezone or refuse to rezone property by legislative action, or it may grant or deny administrative relief, such as by a variance.

A property owner may seek rezoning of his property by legislative action. However, neither the act of rezoning property from one use category to another by legislation, nor the act of refusing to rezone property by legislation, is subject to attack in the courts by way of appeal under the Appellate Procedure Act. An appeal under R. C. Chapter 2506 must be from an administrative agency, such as a planning and zoning commission or board of zoning appeals, or from a city council acting in its quasi-judicial capacity, not in its legislative capacity. See *Tuber* v.

*Perkins* (1966), 6 Ohio St. 2d 155; *In Re Appeal of Clements* (1965), 2 Ohio App. 2d 201.

The rezoning of property by initiative petition and a vote of the people is authorized by Article II, Section 1f of the Ohio Constitution. Ohio laws, charters and ordinances set forth the procedures to be followed. See for example, R. C. 731.28 through R. C. 731.41.

Regarding litigation, it is now well established that the constitutionality of zoning legislation may be attacked in the common pleas court. In past years, property owners attempted to attack the constitutionality of zoning ordinances by bringing a mandamus action.[1] However, the bringing of a mandamus action has been repeatedly declared not to be the appropriate vehicle by which to attack the constitutionality of a zoning ordinance when there is a plain and adequate remedy in the ordinary course of law, such as the seeking of administrative relief and then the taking of an appeal, under R. C. Chapter 2506 from any adverse ruling of the administrative agency. *State, ex rel. Sibarco Corp.,* v. *City of Berea* (1966), 7 Ohio St. 2d 85, 89, 90, cert. denied (1967), 386 U. S. 957; *State, ex rel. Fredrix,* v. *Village of Beachwood* (1960), 171 Ohio St. 343; *State, ex rel. The Gund Co.,* v. *Village of Solon* (1960), 171 Ohio St. 318; *State, ex rel. Lieux,* v. *Village of Westlake* (1951), 154 Ohio St. 412.

*State, ex rel. Sibarco Corp.,* v. *City of Berea, supra,* has made mandamus unavailable as a method of challenging the constitutionality of a zoning ordinance as it applies to a specific parcel of realty. *Driscoll* v. *Austintown Associates* (1975), 42 Ohio St. 2d 263, 275 n. 3.

But a mandamus action can still be maintained if there is a clear legal duty upon a public official to act, such as when a party seeks to compel a designated municipal official to issue a building permit when the party has complied with the municipality's zoning ordinances and building code. *State, ex rel. Killeen Realty Co.,* v. *City of East Cleveland* (1959), 169 Ohio St. 375; *State, ex rel.*

---

[1] R. C. 2731.01 et seq.

*Horvitz Co., v. Warren D. Riebe, et al.* (Ohio Ct. of App., 8th Dist., Dec. 9, 1975), Case No. 34985.

A declaratory judgment action is now a proper litigating vehicle to challenge the constitutionality of a zoning ordinance. *Driscoll v. Austintown Associates, supra.*[2] A declaratory judgment action under R. C. Chapter 2721 is an independent action at law which was created by statute and which may be brought even though a party has an alternative remedy. The use of a declaratory judgment action is not limited to cases in which there is no other available remedy. *Schaefer v. First National Bank* (1938), 134 Ohio St. 511; Civil Rule 57. A declaratory judgment action is not an extraordinary remedy, such as mandamus, nor is it an equitable remedy, but it is a remedy in the ordinary course of law. See *Burt Realty Corp. v. Columbus* (1970), 21 Ohio St. 2d 265, 268.

But, a declaratory judgment action may not be brought if there is an exclusive statutory remedy which a party must use. In such case there is not an alternative remedy but an exclusive remedy and consequently a declaratory judgment action may not be maintained. *Dayton Transit Co. v. Dayton Power and Light Co.* (1937), 57 Ohio App. 299.

Additionally, it is a fundamental principle of law that constitutional questions will not be decided until a necessity for their decision arises. If a case can be decided on another basis, it will not be decided on a constitutional ground. *Driscoll v. Austintown Associates, supra,* at 274; *State, ex rel. Lieux, v. Village of Westlake, supra,* at 415.

Therefore, property owners must exhaust their administrative remedies before initiating a declaratory judg-

---

[2]In addition to attacking the constitutionality of a zoning ordinance by way of a declaratory judgment action, constitutionality may also be attacked for the first time in an appeal to the common pleas court under R. C. Chapter 2506, the Appellate Procedure Act, even though the administrative agency did not have authority to consider the constitutionality of the ordinance. See *Mobil Oil Corp. v. Rocky River* (1974), 38 Ohio St. 2d 23, 26.

ment action attacking the constitutionality of a zoning ordinance. However, the administrative remedies must be effectual to afford the relief sought. *Kaufman* v. *Newburgh Heights* (1971), 26 Ohio St. 2d 217, 219, 220. It is not necessary to exhaust administrative remedies before bringing such a declaratory judgment action if the administrative remedies are not equally as serviceable as a declaratory judgment action, are unusually expensive or onerous, constitute vain acts, or if the administrative agency does not have authority to grant the relief sought. *Gates Mills Investment Co.* v. *Pepper Pike* (1975), 44 Ohio St. 2d 73; *Driscoll* v. *Austintown Associates, supra*; *Kaufman* v. *Newburgh Heights, supra*; *Burt Realty Corp.* v. *Columbus, supra*; *State, ex rel. Killeen Realty Co.*, v. *City of East Cleveland, supra*; *Radaszewski* v. *Keating* (1943), 141 Ohio St. 489, 498.

Also, it is not necessary to seek legislative rezoning as a condition precedent to maintaining a declaratory judgment action, nor is it necessary to exhaust administrative remedies before initiating a declaratory judgment action in a case that does not raise constitutional issues.

Lastly, administrative relief will be discussed. Generally, in using his property a landowner must comply with all of the provisions of the applicable zoning code. However, since it is not always possible in every instance to comply with all of these provisions, an administrative system has been developed by which authority is delegated to administrative agencies to vary the literal terms of zoning ordinances so as to allow a property owner to use his property in a particular fashion. In order to provide flexibility in the application of zoning regulations and relief against practical difficulties or unnecessary hardships in the strict enforcement of zoning regulations, and also in order to protect zoning regulations from constitutional attacks on the ground of unreasonable interference with private rights, most zoning statutes, charters and ordinances grant a particular administrative agency authority to vary the application of zoning provisions in accordance with general or specific rules enumerating appropriate stand-

ards, conditions and safeguards. The granting of a variance is an administrative action whereby an agency vested with authority by statute, charter or ordinance, alters or changes the terms of zoning ordinances as they apply to a particular parcel of property. See R. C. 303.14, R. C. 519.14, and R. C. 713.11.

Enabling legislation allowing for a variance procedure must set forth standards to be applied by the administrative agency.[3] If there are no guidelines or standards for the administrative agency set forth in the enabling legislation, or if the guidelines and standards are too broad and general in nature, an improper delegation of legislative authority to an administrative agency results, and any action based solely on these standards is an improper exercise of legislative power by an administrative agency. With valid standards, however, no improper delegation results, and the action of the agency pursuant to the enabling legislation is administrative in nature and not legislative. *State, ex rel. Selected Properties, Inc.*, v. *Gottfried* (1955), 163 Ohio St. 469; *In Re Appeal of Clements* (1965), 2 Ohio App. 2d. 201; *State, ex rel. Ohio Oil Company*, v. *Defiance* (1955), 99 Ohio App. 398.

A single standard, such as "unnecessary hardship" or "practical difficulty," standing alone is not a valid standard because it would give the administrative agency too much power. A delegation under either of those standards would constitute a delegation of legislative authority. However, combined language in the enabling authority, such as "unnecessary hardship," "practical difficulties" and that the "variance must be in harmony with the zoning ordinances affecting the property" or such similar language, would constitute a valid standard because this combination would set forth a sufficient legislative guideline so that the action taken by the administrative agency in granting the variance would be administrative in nature and not legislative. *L & M Investment Co.* v. *Cutler* (1932), 125

---

[3]Standards may be contained in a statute, charter provision or ordinance.

Ohio St. 12; *Vandervort* v. *Sisters of Mercy* (1952), 97 Ohio App. 153. An attempt to broadly interpret the "in harmony" provision to mean that a variance may be granted if it is "in harmony with existing uses of surrounding properties" is not valid because this would, in effect, give the administrative agency power to rezone by variance. If a non-conforming use variance could be granted by an administrative agency when a proposed use is in conformity with the existing uses of surrounding property, but not in harmony with existing zoning, this would mean that the variance is legislative action. Two branches of government then would be rezoning property, the legislative branch and the administrative branch. Such a situation would violate the doctrine of separation of powers. Action taken by an administrative agency which exceeds the authority granted by valid standards is invalid as an exercise of a legislative function.

The above discussion of course raises the question of what action taken by an administrative agency is considered legislative and what action is considered administrative. The doctrine of separation of powers and the principle that an administrative agency cannot exercise legislative functions are clear concepts. It is the application of these rules that is difficult. This application is especially difficult in the field of zoning. The power to zone or rezone property within a municipality belongs exclusively to the legislative branch of municipal government and cannot be delegated to an administrative agency. Further, rezoning cannot be done under the guise of a variance. *Kaufman* v. *Newburgh Heights, supra*; *Fox* v. *Johnson* (1971), 28 Ohio App. 2d 175; *State, ex rel. Basista,* v. *Melcher* (1963), 118 Ohio App. 37; *Vandervort* v. *Sisters of Mercy, supra* at 157; *Garber* v. *Joseph Skilken and Co.* (1972), 33 Ohio Misc. 178; *In Re Zoning Variance of Gillen* (1969), 21 Ohio Misc. 84.

Zoning ordinances and zoning regulations deal with many subjects, such as use, height, area, density, yard setbacks, parking and other features. A major question in the zoning area is whether an administrative agency has

authority to grant a variance from any and all of the zoning regulations or whether the authority of the administrative agency is limited to granting a variance only from some of the regulations.

The simplest form of variance involves one or more of the zoning regulations other than use. When such a variance is granted the property is used for a purpose specified in or permitted by the zoning ordinance affecting the property and it is one of the regulations other than use that is varied. A more difficult problem occurs when a variance is sought for a non-conforming use, which is a use not provided for in the zoning ordinance affecting the property.

The courts of Ohio have decided many cases involving the subject of variances, but have not directly stated which non-conforming use variances constitute a delegation of legislative authority and which ones constitute administrative action.

In the present case we have such an issue. The city of Warrensville Heights is contending that the property owner did not exhaust its administrative remedies by seeking a variance from the board of zoning appeals permitting a retail use for property zoned for single-family use. It argues that the board has authority to grant a variance permitting a U-4 local retail use (service station) in a U-1 single family use district.

The authority of the Warrensville Heights Board of Zoning Appeals to grant a variance is contained in Section 8(d) of the Warrensville Heights Charter as follows:

"All meetings of the Board, including committee meetings, shall be open to the public. It shall be the duty of the Board of Zoning Appeals to hear and decide appeals made for exceptions to and variations in the zoning ordinance of the Municipality in conformity with the purpose and intent thereof and to hear and decide all appeals made for exceptions to and variations in the application of zoning ordinances, or orders and regulations of administrative officials or agencies in regard thereto. The Board of Zoning Appeals shall permit an exception or variance from the

zoning ordinance only when there are practical difficulties or unnecessary hardships in the way of carrying out the strict interpretation of zoning ordinance and so long as the granting of such exception or variance will be in harmony with general purpose and intent of said ordinance and that the public health, safety and general welfare will continue to be secured and substantial justice done. All rulings of the Board of Zoning Appeals shall be subject to confirmation by the Council."

As noted above, the standards provided for in Section 8(d) are valid since they sufficiently set forth standards and guidelines for the board of zoning appeals so that the action taken in conformity with the standards will be considered administrative and not legislative. However, the city seeks to exceed its authority under these standards by arguing that the board of zoning appeals may issue a non-conforming use variance for a service station in the instant case. An administrative agency cannot exceed the authority of the enabling legislation in granting a variance.

The authority of the board is clearly limited to granting a variance, based on practical difficulty and unnecessary hardship, and for a use that is in harmony with the existing zoning of the property, namely, for a single-family use, as provided in the charter above. See, *Mentor Lagoons, Inc.* v. *Zoning Board of Appeals* (1958), 168 Ohio St. 113; *State, ex rel. Shaker Square Co.,* v. *Guion* (1957), 76 Ohio Law Abs. 524. A use for a service station, provided for in local retail class U-4, is not in harmony with U-1, single-family zoning.

It is noted that even if the enabling legislation and standards authorizing the granting of a variance were broad enough to permit the granting of a non-conforming use variance for a U-4 local retail use in a U-1 single-family district, such legislation would be considered invalid as a delegation of legislative authority and any action taken thereunder would be an invalid exercise of a legislative function by an administrative agency because it is, in effect, a rezoning by variance.

The foregoing discussion does not mean that a non-

conforming use variance may never be granted by an administrative agency. It only means that an administrative agency cannot grant a non-conforming use variance which in effect rezones property. If the proposed use is in harmony with the existing zoning, the granting of a use variance would be considered an administrative act and not rezoning, which is a legislative act.

The latter situation would occur when a variance is requested for a use that is not a specifically enumerated permitted use of the zoning category of the property but also not a prohibited use, but a use that is in harmony with the existing zoning affecting the property. Under these circumstances, a non-conforming use variance could be granted and considered as administrative action and not legislative action. See *Garrett* v. *Richfield Township* (1973), 45 Ohio App. 2d 285, 286.[4] Naturally, if the proposed use of the property conforms to or is permitted by the zoning ordinance, it is not necessary to seek a use variance.

As stated above, in the present case the Warrensville Heights Board of Zoning Appeals does not have authority under Section 8(d) of the Charter to grant a non-conforming use variance for a service station on property zoned for single family use. Appropriate relief could be obtained by either a rezoning of the property or in a declaratory judgment action seeking a declaration that the single-family zoning affecting the property was unconstitutional. The appellee attempted both methods. He sought rezoning but it was denied. He then brought this declaratory judgment action. It was not necessary to seek administrative relief because the building commissioner did not have authority to issue a building permit, nor did the board of zoning appeals have authority to grant the relief sought. Assignments of error one, three and four, which raised the issue of whether the appellee exhausted its administrative remedies prior to initiating the declaratory judgment action, are not well taken.

---

[4] In this case a non-conforming use variance was granted, permitting a sports arena on property zoned for retail-commercial purposes.

As to the second assignment of error, the law is well settled that if a zoning restriction affecting a parcel of realty is arbitrary, capricious, discriminatory and confiscatory and unrelated to the public health, safety, morals and welfare, it is an invalid exercise of the police power depriving citizens of their property without due process of law and equal protection of laws, and is therefore unconstitutional. See, for example, *Pritz* v. *Messer* (1925), 112 Ohio St. 628.

It is not the zoning classification of the property that controls whether the zoning restriction is constitutional. The question is whether there is a change in the character of the neighborhood. If all of the surrounding property is being used for a commercial use and the zoning of the property under attack is still for single-family use, this is a change in the character of the neighborhood that would make the single-family zoning unconstitutional. *Pure Oil Division* v. *Brook Park* (1971), 26 Ohio App. 2d 153; *State, ex rel. Prentke,* v. *Village of Brook Park* (1958), 107 Ohio App. 325; *State, ex rel. Rosenthal,* v. *City of Bedford* (1956), 74 Ohio Law Abs. 425.

Based on the evidence in this case as stated above, the trial court correctly concluded that the single-family classification on the appellee's property is unconstitutional, and therefore the trial court's ruling is not against the manifest weight of the evidence and is not contrary to law. The appellant's second assignment of error is not well taken.

*Judgment affirmed.*

JACKSON and MANOS, JJ., concur.