PARIS, TRUSTEE, ET AL., APPELLANTS,
*v.* MAYFIELD VILLAGE ET AL.,
APPELLEES.

(No. 47629—Decided March 26, 1984.)

*Mr. Joseph W. Bartunek,* for appellants.

*Mr. Dale C. Feneli,* for appellees.

ANN MCMANAMON, J. Julius Paris and Olive Patterson (plaintiffs-appellants) are the owners of contiguous parcels of real property located within the village of Mayfield (defendant-appellee). Together, appellants own approximately 13.4 acres of a 14.06 acre rectangular tract bounded on three sides by

Beta Drive, SOM Center Road and Wilson Mills Road. This joint parcel is divided approximately in the middle by a zoning line which runs north and south. The west half is zoned for office/laboratory use, and the east half for single family dwellings. The adjacent land immediately to the west and diagonally to the north is zoned for production/distribution use.

On June 9, 1982 appellants filed an action in the court of common pleas seeking a declaratory judgment that appellee's zoning ordinances are unconstitutional. Their complaint alleges that Paris submitted various proposals to the village of Mayfield in an effort to rezone appellants' property to production/distribution use. Appellants contend that these proposals were rejected by the appellee's planning and zoning commission and the village council. Appellants further claim that the existing zoning classifications are discriminatory and arbitrary; that they lack a reasonable relationship to the public health, safety, welfare or morals of the village; and that they constitute a deprivation of appellants' property rights without due process of law.

The appellants also seek a declaration by the court that production/distribution is the only valid zoning classification which can be imposed upon their land; that the land be so zoned and that the village issue building and use permits for these purposes upon proper application by appellants.

On August 18, 1982 the village moved pursuant to Civ. R. 12(B)(6) for dismissal of appellants' complaint for failure to state a claim upon which relief could be granted. The appellee argues that, under the village charter, all proposals to rezone property must be submitted to the village electors before any change in zoning classification can be effected.

The appellee proposes that, since appellants have not submitted their zoning proposal to the village voters, they have failed to exhaust their administrative remedies and are consequently precluded from maintaining their present action.

The trial court agreed and granted appellee's motion to dismiss on September 19, 1983 finding that the "plaintiffs' proposed rezoning must first be submitted to the voters of Mayfield Village by means of an initiative petition" before appellants may bring a declaratory judgment action.

Appellants have timely appealed this order citing three assignments of error:  :

I

"The lower court erred in determining that a landowner must exhaust administrative remedies before an unconstitutional zoning measure, as applied to a particular parcel of property, can be challenged by a declaratory judgment action, where there are no administrative remedies available."

II

"The lower court erred in determining that a landowner must exhaust legislative remedies by submitting a rezoning proposal to the voters of a municipality by means of an initiative petition before an unconstitutional zoning measure, as applied to a particular parcel of property, can be challenged by a declaratory judgment action."

III

"The lower court erred in granting a motion to dismiss a declaratory judgment action pursuant to Civ. R. 12(B)(6) where the complaint alleges that a zoning measure, as applied to a particular parcel of property, was unconstitutional and invalid, that the said zoning ordinance is discriminatory, and unreasonable, and deprives the owners of the lawful use of their property, without due process, contrary to the Fifth and Fourteenth Amendments to the United

States Constitution and contrary to Sections 1, 16 and 19 of Article I of the Ohio [state] Constitution, and that said zoning regulation does not bear any substantial relationship to the health, welfare, safety or morals of the municipality."

These assigned errors are interrelated and will be consolidated for the purpose of our consideration.

This appeal challenges the trial court's ruling that appellants must pursue an initiative referendum to change the present village zoning ordinance before they may raise the constitutionality of the subject zoning in a declaratory judgment action. Appellants posit that no such prerequisite exists under the Ohio Revised Code or at common law. Appellee, on the other hand, contends that the referendum requirement is imposed on appellants by virtue of the village charter and *Forest City Enterprises* v. *Eastlake* (1975), 41 Ohio St. 2d 187 [70 O.O.2d 384], reversed *sub. nom. Eastlake* v. *Forest City Enterprises* (1976), 426 U.S. 668, on remand (1976), 48 Ohio St. 2d 47 [2 O.O.3d 136].

Under Sections 11 through 14, Article III of the village charter,[1] any ordinance or resolution amending or repealing zoning or other land use regulation must be submitted to the village electorate for approval and adoption by majority vote. The issue may be placed on the ballot by majority vote of the village council if it approves the proposal, or, in the absence of such approval, by initiative referendum.

*Forest City, supra,* involved the sole question of whether a municipal charter provision which provided for voter approval of zoning ordinances constituted an unlawful delegation of legislative power in violation of the Due Process Clause of the Fourteenth Amendment. In overruling a judgment of the Ohio Supreme Court which declared such a provision unconstitutional, the United States Supreme Court at 672-673 stated:

"The conclusion that Eastlake's procedure violates federal constitutional guarantees rests upon the proposition that a zoning referendum involves a delegation of legislative power. A referendum cannot, however, be characterized as a delegation of power. Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create. See, *e.g.,* The Federalist No. 39 (J. Madison). In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature. *Hunter* v. *Erickson,* 393 U.S. 385, 392 (1969).

"* * * The referendum * * * is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies. The practice is designed to 'give citizens a voice on questions of public policy.' *James* v. *Valtierra, supra* [(1971), 402 U.S. 137], at 141.

"In framing a state constitution, the people of Ohio specifically reserved the power of referendum to the people of each municipality within the State."

In the instant case the lower court based its dismissal of appellants' complaint on its understanding of *Forest City.* The court found:[2]

"[T]hat to permit the plaintiffs herein to seek at the present time a declaration of the unconstitutionality of the Mayfield Village zoning ordinances as applied to their property would in effect abrogate charter rights, the constitutionality of which has been upheld in the *Eastlake* decision, and give the citizens of Mayfield Village even less input in zoning matters than the citizens of a municipality which does not include

---

[1] See Appendix A.

[2] Journal Entry and Opinion of October 17, 1983, at 3.

in its charter the reservation of the final decision in land use changes to the electorate. This Court will not permit such an outcome."

It is well established in Ohio that R.C. 2721.03[3] confers upon property owners a right to attack the constitutionality of a zoning ordinance by means of a declaratory judgment action. *Union Oil Co.* v. *Worthington* (1980), 62 Ohio St. 2d 263 [16 O.O.3d 315]; *G.S.T.* v. *Avon Lake* (1976), 48 Ohio St. 2d 63 [2 O.O.3d 217]; *Driscoll* v. *Austintown Assoc.* (1975), 42 Ohio St. 2d 263 [71 O.O.2d 247]; *Flair Corp.* v. *Brecksville* (1976), 49 Ohio App. 2d 77 [3 O.O.3d 146].

To bring such an action, however, a landowner must first exhaust all administrative remedies, unless it is demonstrated that "the administrative remedies are not equally as serviceable as a declaratory judgment action, are unusually expensive or onerous, constitute vain acts, or if the administrative agency does not have the authority to grant the relief sought." *Standard Oil Co.* v. *Warrensville Heights* (1976), 48 Ohio App. 2d 1, 14 [2 O.O.3d 4]. The rationale in the formulation of the rule is " 'that constitutional questions will not be decided until the necessity for their decision arises.' " *Driscoll, supra,* at 274. Thus, if a village administrative agency were empowered to grant appellants a zoning variance or to change the existing use or classification of the land, then appellants would be required to utilize that remedy prior to maintaining this action and judicial intervention would occur only as a last resort.

However, under the village charter, there is no administrative remedy available to appellants since no administrative agency exists which could provide appellants appropriate relief.

Village Ordinance 1105.02 limits the authority of the board of zoning appeals as follows:

"The Board of Appeals shall have no power or authority to grant any change of or variance in any land use or classification of district from the existing zoning ordinances or the Zoning Map of the Municipality, or to permit any land use to become nonconforming therewith. In zoning for land use classification districts for single family residence purposes only, the Board of Appeals may grant changes or variances with respect to restrictions on height of buildings or other structures, the size of parcels, and the size, location and bulk of buildings and other structures, including percentage of lot occupancy, setback lines, and area of yards, courts and other open spaces, provided that no such changes or variances shall be granted by the Board of Appeals in any other zoning or land use classification or district."

To this extent it is clear that the failure to exhaust administrative remedies is not an available basis for the dismissal of appellants' complaint.

Under the village charter the power to effect changes[4] in zoning and land use rests with the village electorate. The rezoning of property by initiative petition and a vote of the people is a recognized legislative function. See *Forest City, supra,* 426 U.S. at 673 and 674; and *Hilltop Realty, Inc.* v. *South Euclid* (1960), 110 Ohio App. 535 [13 O.O.2d 488].

---

[3] R.C. 2721.03 provides in part:

"Any person * * * whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under such instrument, constitutional provision, statute, rule, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

[4] This is aside from the limited powers given to the board of zoning appeals under village ordinance 1105.02.

This court has previously determined that the exhaustion of available legislative remedies is not "a condition precedent to maintaining a declaratory judgment action." *Standard Oil Co., supra,* at 14. See, also, *G.S.T., supra.* Consequently we find that the appellants' failure to avail themselves of the legislative remedy delineated by appellee's charter does not provide grounds for the dismissal of appellants' complaint.

The dismissal of this action is apparently based upon appellee's motion pursuant to Civ. R. 12(B)(6).[5] In order to enter such a dismissal it must affirmatively appear from the allegations of the complaint that no set of facts could be established by evidence which would entitle the complainant to the relief requested. See *Slife* v. *Kundtz Properties* (1974), 40 Ohio App. 2d 179 [69 O.O.2d 178], and *Stephens* v. *Boothby* (1974), 40 Ohio App. 2d 197 [69 O.O.2d 189].

We find, upon examination of appellants' complaint, that application of Civ. R. 12(B)(6) is patently inappropriate. We note that the trial court made no finding that appellants could not have proven facts to support their claim and neither do we. We further find that there are no legal or procedural impediments which prevent appellants from maintaining a declaratory judgment action in this case. Their assignments of error are well-taken.

Reversed and remanded for further proceedings.

*Judgment reversed and cause remanded.*

CORRIGAN, P.J., and PARRINO, J., concur.

---

[5] Civ. R. 12 provides in part:

"(B) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, ex-

## APPENDIX A

"SECTION 11. EFFECTIVE DATE OF ORDINANCES AND RESOLUTIONS.

"Each ordinance or resolution providing for (a) the appropriation of money, (b) an annual tax levy, (c) improvements petitioned for by the owners of a majority of the foot frontage of the property benefited and to be special assessed therefor, and (d) any emergency ordinance or resolution necessary for the immediate preservation of the public peace, health or safety, shall take effect, unless a later time be specified therein, upon its signature by the Mayor approving the same, or upon the expiration of the time within which it may be vetoed by the Mayor, or upon its passage after it has been vetoed by the Mayor, as the case may be. Except as otherwise provided in this Charter, all other ordinances and resolutions shall take effect and be operative in the manner provided by the general laws of the State of Ohio.

"Each emergency measure shall contain a statement of the necessity for such emergency action, and shall require the affirmative vote of five members of Council for its enactment. No ordinance or resolution (a) relating to any change in the boundaries of the Municipality, (b) providing for the surrender or joint exercise of any of its powers, (c) enacting, amending or repealing any zoning ordinance or other matter described in Sections 12 and 13 of this Article III, (d) granting any franchise, or (e) contracting for the supply to the Municipality or its inhabitants of the product or service of any utility, whether municipally

cept that the following defenses may at the option of the pleader be made by motion:
* * *

"(6) failure to state a claim upon which relief can be granted."

owned or not, shall be enacted as an emergency measure.

"SECTION 12. MANDATORY REFERRAL OF ORDINANCES AND RESOLUTIONS.

"No public building, street, boulevard, parkway, park, playground, bridge, tunnel, publicly or privately owned utility or part thereof shall be constructed or authorized to be constructed in the Municipality, nor shall any street, avenue, parkway, boulevard or alley be opened for any purpose whatsoever, nor shall any street, avenue, parkway, boulevard or alley be widened, narrowed, relocated, vacated, or its use changed, nor shall any ordinance referring to zoning or other regulations controlling the use or development of land or changing the existing zoning or use of land, be adopted unless and until it shall have been submitted to the Planning and Zoning Commission for report and recommendation. Any matter so referred to the Planning and Zoning Commission shall be acted upon by it within ninety (90) days from the date of referral unless a different period of time be provided by Council. If the Planning and Zoning Commission shall fail to act within the time allotted it shall be deemed to have approved such matter. Any resolution, ordinance or order disapproved by formal action of the Planning and Zoning Commission shall require a vote of five (5) members of the Council for adoption or authorization.

"SECTION 13. PUBLIC NOTICE AND HEARING ON CERTAIN ORDINANCES.

"Before any ordinance or resolution may be enacted by the Council amending or repealing any: (a) platting ordinance, (b) the zoning map of the Municipality, (c) zoning or use classification or district, (d) restrictions on height of buildings and other structures, (e) the size of parcels in any zoning or use classification, or (f) the percentage of lot occupancy of buildings and other structures; the Council shall (i) refer such ordinance or resolution to the Planning and Zoning Commission for report and recommendation as required by Section 12 of this Article III; (ii) read the same in full or by title at two successive Council meetings, (iii) thereafter hold a public hearing thereon (which public hearing shall be held at least thirty days after the second reading and prior to the third reading thereof), and (iv) shall give thirty days notice of the time and place of such public hearing in a newspaper of general circulation in the Municipality. No such ordinance or resolution shall be enacted or adopted unless passed or approved after the third reading thereof by not less than four members of Council, and, if such ordinance or resolution has been disapproved by the Planning and Zoning Commission, by not less than five members of Council. Thereafter, any such ordinance which has been approved by the Council shall be submitted to a vote of the electors of the Municipality, and shall become effective only upon approval thereof by such electors in accordance with the provisions of Section 14 of this Article III.

"SECTION 14. SUBMISSION TO ELECTORATE OF ZONING AND LAND USE CHANGES.

"Upon approval by the Council and the Mayor, or upon the approval of the Council after a veto of the Mayor, of any ordinance or resolution amending or repealing any ordinance, resolution or map described in Section 13 of this Article III, the Council shall thereupon certify such ordinance or resolution to the Board of Elections to be submitted to the electors at the next general or regularly scheduled primary or special election to be held in the Municipality more than sixty (60) days after the approval of such ordinance or resolution by Council. No such ordinance or resolution shall become effective until approved at such an election by a majority vote of the qualified electors of the Municipality

456

voting in such election, and the results of such election have been certified by the Board of Elections. Such election shall be provided for by ordinance of Council, which ordinance shall prescribe the manner in which the submission shall be made. All ordinances, resolutions, motions and orders, or portions thereof, inconsistent with the provisions of Sections 11, 12, 13 and 14 of this Article III are hereby repealed. The provisions of Sections 11, 12, 13 and 14 of this Article III shall be severable and, if any section, subsection, sentence, part, word or phrase, or the application thereof, is held invalid, illegal or unconstitutional for any reason, such holding shall not invalidate or affect the force and effect of any other section, subsection, sentence, part, word or phrase, or the application thereof. It is hereby declared to be the intention of the electors that Sections 11, 12, 13 and 14 of Article III of this Charter would have been adopted had such invalid, illegal or unconstitutional section, subsection, sentence, part, word or phrase, or the application thereof, not been included herein."