DRISCOLL ET AL., APPELLEES AND CROSS-APPELLANTS, *v.*
AUSTINTOWN ASSOCIATES, A PARTNERSHIP, ET AL., APPELLANTS
AND CROSS-APPELLEES.

[Cite as Driscoll v. Austintown Associates (1975),
42 Ohio St. 2d 263.]

264

(No. 74-204—Decided May 14, 1975.)

*Mr. James L. Messenger* and *Mr. Joseph R. Bryan,* for appellees and cross-appellants.

*Messrs. Burdman, Stevens & Gilliland* and *Mr. Paul E. Stevens,* for appellants and cross-appellees.

O'NEILL, C. J. This case presents two issues for determination: The effect of the unappealed 1971 declaratory judgment order on the 1973 injunction suit, and the effect of the restrictive convenants on appellants' proposed use of their property.

I.

The major contention of Willowcrest's declaratory judgment action was that the existing zoning ordinance, as it applied to the 13-acre tract of land to prohibit its use for multi-family dwelling units, was unconstitutional. The 1971 declaratory judgment order agreed with this contention and ordered the township zoning inspector to issue permits for the construction of apartment buildings. Although that judgment was not appealed, appellees have advanced, before both this court and the Court of Appeals, four reasons to support their argument that the order was void and, therefore, subject to collateral attack in the injunction action. The Court of Appeals accepted two of the reasons. This court rejects all four reasons, and holds that the 1971 declaratory judgment order is a valid and final decree entitling appellants to use the property in question as the site for multi-family dwellings.

The weakest reason asserted by appellees, and one that was correctly rejected by the Court of Appeals, is that the Declaratory Judgment Act (R. C. Chapter 2721) does not permit declaratory relief with regard to township ordinances. Appellees argue that their conclusion

flows from the absence of reference to township ordinances in R. C. 2721.03. That statute provides, in part, that:

"Any person * * * whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in Section 119.01 of the Revised Code, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under such * * * constitutional provision, statute, rule, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

R. C. 2721.03, in conjunction with R. C. 2721.04 and 2721.05, specify certain categories of controversies which are cognizable in declaratory judgment actions. However, R. C. 2721.06 expressly provides that these categories are not exclusive:

"Sections 2721.03 to 2721.05, inclusive, of the Revised Code do not limit or restrict the exercise of the general powers conferred in Section 2721.02 of the Revised Code in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

The "general powers conferred in Section 2721.02" to render declaratory judgments are contained in the first sentence of that statute: "Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." This general grant of power is certainly broad enough to encompass actions contesting the constitutionality of township zoning ordinances.

Another reason asserted by appellees to support their collateral attack is that a property owner who has failed in an attempt to have the applicable zoning restriction legislatively changed may not utilize declaratory judgment to contest the constitutionality of that restriction. Appellees refine this assertion by contending that the sole method available to such a property owner for obtaining relief from the zoning ordinance is to seek an adminstrative change of zoning and to appeal, pursuant to R. C. Chapter

2506, the final denial thereof. In rejecting this argument, the Court of Appeals stated:

"* * * We agree with the contention of appellee [appellants before this court] that the Supreme Court may be headed in the direction of deciding that the constitutionality of zoning law can only be tested by a proceeding under Chapter 2506, Revised Code, but it has not yet done so."

This court concurs in the Court of Appeals' rejection of appellees' argument, and holds that the availability of a R. C. Chapter 2506 action to review the denial of a variance sought by the owner of a specific tract of land does not preclude a declaratory judgment action which challenges the constitutionality of the zoning restrictions on that land.

It is true that the Austintown Township Zoning Ordinance established a variance procedure which, if utilized by Willowcrest Land Co., could have resulted in an administrative order permitting it to construct multi-family dwellings on its property.[1] It is also true that a denial of the variance request could have been judicially reviewed pursuant to R. C. Chapter 2506. *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23, 309 N. E. 2d 900; *State, ex rel. Sibarco Corp.*, v. *Berea* (1966), 7 Ohio St. 2d 85, 218 N. E. 2d 428.

However, the existence of the R. C. Chapter 2506 remedy does not preclude resort to an action for a declara-

---

[1]Section XIII(G) of the zoning ordinance created a township board of appeals. One of the powers of the board was:

"To authorize upon appeal in specific cases such variance from the terms of this ordinance as will not be contrary to the public interest, and which will not substantially affect the comprehensive plan of zoning in Austintown Township, provided further, that adherence to the strict letter of the ordinance will cause difficulties and hardships the imposition of which upon the petitioner is unnecessary in order to carry out the general purpose of the plan, so that the spirit of the ordinance shall be observed and substantial justice done."

The appeal to the board is presumably from a decision of the township zoning inspector denying a zoning permit.

tory judgment. Civ. R. 57 provides, in part, that "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Although the Civil Rules were not in force at the time Willowcrest filed its declaratory judgment petition, they did become effective almost one year prior to the rendition of the order in that action. The trial court did not state that application of the Civil Rules to Willowcrest's action would not be feasible or would work an injustice, and, therefore, pursuant to Civ. R. 86, the Civil Rules, including Civ. R. 57, governed the trial court's final disposition of Willowcrest's declaratory judgment action.

The effect of the "another adequate remedy" language in Civ. R. 57 is to validate a declaratory judgment action even though there is available an alternative but nonexclusive remedy which could provide the relief sought.[2]

_____

[2]Whether this provision of Civ. R. 57 changed Ohio law is an issue which need not be answered in this case. Ohio adopted .the Uniform Declaratory Judgment Act in 1933. (See 115 Ohio Laws 495.) A controversy immediately arose among the lower courts concerning the alternative nature of a declaratory judgment action. One faction contended that such an action would lie only in those situations in which there was no other adequate remedy. *Eiffel Realty & Invest. Co.* v. *Ohio Citizens Trust Co.* (1937), 55 Ohio App. 1, 8 N. E. 2d 470. The other faction argued that a declaratory judgment action was a truly alternative remedy—that is, declaratory judgment would be proper even in those situations for which there existed another remedy. See *Pearson* v. *Pearson* (1938), 58 Ohio App. 503, 16 N. E. 2d 837.

This court first confronted the controversy in *Schaefer* v. *First Natl. Bank of Findlay* (1938), 134 Ohio St. 511, 513, 18 N. E. 2d 263:

"The query has been raised as to whether the Uniform Declaratory Judgments Act is an alternative remedy. Surely it is not alternative in the sense that the action always lies even though there may be ground for full relief in equity or a suit at law may be maintained. But it is certainly alternative in the sense that it lies notwithstanding another remedy is available, in all those cases in which there is a real controversy between adverse parties in a matter that is justiciable and the court, in the exercise of a sound discretion, finds that speedy relief is necessary to the preservation of rights which might otherwise be impaired or lost. If the remedy through a declaratory judgment does not at least in part fill the gap between law and equity there would

Neither past decisions of this court nor the relevant statutes indicate that the variance (R. C. Chapter 2506) remedy is the exclusive method of challenging existing zoning restrictions. In fact, in many prior decisions this court has reviewed declaratory judgment actions contesting the constitutionality of zoning laws. *Superior Uptown* v. *Cleveland* (1974), 39 Ohio St. 2d 36, 313 N. E. 2d 820; *Kaufman* v. *Newburgh Heights* (1971), 26 Ohio St. 2d 217, 271 N. E. 2d 280; *Burt Realty Corp.* v. *Columbus* (1970), 21 Ohio St. 2d 265, 257 N. E. 2d 355; *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, 197 N. E. 2d 201. Although none of those cases directly confronted the contention that a R. C. Chapter 2506 action was the exclusive method of challenging zoning restrictions, they are at least implicit authority for today's explicit holding that declaratory judgment is a proper alternative remedy for such challenges.

That a R. C. Chapter 2506 action is a nonexclusive method of removing an existing zoning restriction is also indicated by the differences between that action and a declaratory judgment action challenging the constitutionality of the zoning restriction. Although both actions seek the same ultimate relief—elimination of an existing zoning regulation which prohibits a proposed use of the property—the similarities between them ends there. The R. C. Chapter

be little purpose in enacting the statutes providing for such procedure. However, in the exercise of its discretion, the court may refuse a declaratory judgment when it deems that rights may be fully protected through other available remedies. * * *" *Schaefer* clearly struck a compromise between the competing "alternative remedy" views, and this compromise was recited in subsequent cases. *American Life & Accident Ins. Co.* v. *Jones* (1949), 152 Ohio St. 287, 89 N. E. 2d 301; *Radaszewski* v. *Keating* (1943), 141 Ohio St. 489, 49 N. E. 2d 167. See, also, *Burt Realty Corp.* v. *Columbus* (1970), 21 Ohio St. 2d 265, 257 N. E. 2d 355.

Therefore, prior to the adoption of the Civil Rules there was ample support for one commentator's conclusion that "Ohio can be classified with states holding the declaratory judgment an alternative remedy only with considerable reservations and explanations." Vanneman, Alternative Character of the Declaratory Judgment in Ohio, 11 Ohio St. L. J. 273, 277.

2506 action is a judicial review of the final administrative decision denying the property owner a variance. It is quite possible that R. C. Chapter 2506 provides the exclusive method of obtaining review of such an administrative determination. A declaratory judgment action attacking the constitutionality of the zoning restriction does not call into question the denial of a variance, even though, for reasons which appear in a subsequent section of this opinion, utilization of the administrative variance procedure is normally a prerequisite to initiating a declaratory judgment action. Nevertheless, the declaratory judgment action is independent from the administrative proceedings; it is not a review of the final administrative order.

As to the appellees' third reason for justifying their collateral attack, the Court of Appeals held that "all owners of property within and contiguous to and directly across the street from an area" whose zoning is challenged in a declaratory judgment action are interested and necessary parties-defendant to that action. Since Willowcrest's declaratory judgment petition named as defendants only the Austintown Township Board of Trustees and the township zoning inspector, the Court of Appeals concluded that the 1971 order contained a fatal jurisdictional flaw. This court disagrees.

A person desiring to use land in a manner prohibited by existing zoning regulations ordinarily has two nonjudicial remedies to remove the restrictions. First, he can attempt to obtain a variance, assuming that the zoning code provides a variance procedure which could give the landowner the relief he seeks. Although such a procedure existed in Austintown Township, Willowcrest did not attempt to utilize it.

The second nonjudicial remedy is to attempt to secure a "rezoning," which may be defined as a legislative change of zoning. See *Forest City Enterprises* v. *Eastlake* (1975), 41 Ohio St. 2d 187, 324 N. E. 2d 740; *Mobil Oil Corp.* v. *Rocky River, supra* (38 Ohio St. 2d 23, 30) (concurring opinion of Justice Corrigan). R. C. 519.12 provides

a complete procedure for handling township rezoning applications. Willowcrest applied for, but was denied, rezoning for its property.

R. C. 519.12 expressly requires that if a rezoning application pertains to ten or less parcels, the township zoning commission must send written notice of its hearing on the application "to all owners of property within and contiguous to and directly across the street from such area proposed to be rezoned * * *." The Court of Appeals interpreted this language as legislative intent to make such property owners necessary parties in a declaratory judgment action attacking the constitutionality of the zoning ordinance as applied to a specific parcel of realty. In so doing, the Court of Appeals disregarded the fundamental difference between the rezoning procedure and the declaratory judgment action. The former is a method for disposing of requests for legislative action. The latter is an invocation of judicial power. The fact that a statute specifies that a certain group of persons be given notice of a hearing pertaining to proposed legislative action simply has no relevance in determining necessary parties to a declaratory judgment lawsuit challenging the constitutionality of the existing legislation.

Equally irrelevant is the case of *Roper* v. *Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 180 N. E. 2d 591, a case cited by both the Court of Appeals and the appellees. The distinctions between *Roper* and the present appeal are readily apparent. *Roper* involved the right of a party who appeared before a township board of appeals in opposition to a variance request to institute a R. C. Chapter 2506 appeal from an adverse decision of the board; the present case centers on the necessity of joining certain property owners as parties-defendant in a declaratory judgment action challenging the constitutionality of a specific section of a township's zoning ordinance. These distinctions render *Roper* inapposite to this appeal.

The first sentence of R. C. 2721.12 is the relevant statutory provision for determining necessary parties in a declaratory judgment action:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration."

In *Schriber Sheet Metal & Roofers* v. *Shook* (1940), 64 Ohio App. 276, 285, 28 N. E. 2d 699, 703, the Court of Appeals for Montgomery County, after quoting the first sentence of present R. C. 2721.12, stated:

"Counsel for defendant * * * assert that 'affected' has reference to one who is practically affected rather than legally affected, and that as one can not be legally bound unless he is a party it was contemplated that any one practically affected should be made a party. Although the question is new it is our judgment that the section is in accord with the general policy of the law that only those persons who are legally affected are proper parties to a lawsuit."

This court also subscribes to that general policy. The surrounding property owners may have a practical interest in the outcome of a declaratory judgment action attacking the constitutionality of zoning as it applies to a specific parcel of property, but they have no legal interest in the outcome. Therefore, they are not necessary parties-defendant to such an action.

The final reason advanced by appellees to support their collateral attack upon the 1971 declaratory judgment order is that Willowcrest's failure to seek a variance prior to instituting the declaratory judgment action was a jurisdictional defect. The Court of Appeals accepted this contention; this court rejects it.

This court has previously indicated that prior to initiating a declaratory judgment action attacking the constitutionality of a zoning ordinance as applied to his property, the owner normally must exhaust any administrative remedy that could provide him with the relief he seeks. *Kaufman* v. *Newburgh Heights, supra* (26 Ohio St. 2d 217); *Burt Realty Corp.* v. *Columbus, supra* (21 Ohio St. 2d 265); *Cook-Johnson Realty Co.* v. *Bertolini* (1968), 15 Ohio St. 2d 195, 239 N. E. 2d 80. See, also, *State, ex rel. Foreman,* v.

*City Council* (1965), 1 Ohio St. 2d 132, 205 N. E. 2d 398. The rationale behind the doctrine of "exhaustion of administrative remedies" was set forth in *State, ex rel. Lieux,* v. *Westlake* (1951), 154 Ohio St. 412, 96 N. E. 2d 414. *Lieux* was a mandamus action in which a property owner sought a writ to compel the village of Westlake and its building commissioner to issue her a building permit for the construction of a commercial greenhouse. The commissioner had earlier refused to issue such a permit on the ground that the proposed use did not conform to the existing zoning code. Although Westlake's zoning ordinance specifically allowed the village board of appeals to grant the relief sought by relator, she did not attempt to utilize that administrative remedy. Instead, she attacked the constitutionality of the zoning ordinance in the mandamus action. In holding that she was not entitled to the writ, this court stated, at page 415:

"It is a fundamental principle of law that constitutional questions will not be decided until the necessity for their decision arises. *State, ex rel. Herbert,* v. *Ferguson, Aud.,* 142 Ohio St. 496, 52 N. E. (2d), 980; *Village of Strongsville* v. *McPhee,* 142 Ohio St. 534, 53 N. E. (2d), 522; *Rucker* v. *State,* 119 Ohio St. 189, 162 N. E. 802. In the instant case, if the relator had followed the administrative remedy provided for in the ordinance, the village board of appeals might have given her a special permit. If such special permit were given to relator, then relator would not be prejudiced by the zoning ordinance which she seeks to have declared unconstitutional. Whether it will ever be necessary for this court to consider the constitutionality of this zoning ordinance, in order to determine relator's right to a building permit, cannot be determined until relator has exhausted the administrative remedies provided for by that ordinance. Cf. *Belden* v. *Union Central Life Ins. Co.,* 143 Ohio St., 329, at 352, 55 N. E. 2d 629; *State, ex rel. Kittel, a Taxpayer,* v. *Bigelow,* 138 Ohio St., 497, 37 N. E. (2d), 41; *State, ex rel. Marcolin,* v. *Smith, Sec. of State,* 105 Ohio St., 570, 138 N. E. 881; *Pfeifer* v. *Graves, Secy. of*

*State*, 88 Ohio St., 473, 104 N. E., 529; *City of Cincinnati* v. *Hillenbrand*, 103 Ohio St. 286, 133 N. E. 556.'"[3]

This court has recognized at least two situations in which exhaustion of administrative remedies is not required prior to filing a declaratory judgment action challenging the constitutionality of zoning. One, of course, is the situation in which there is no administrative remedy available which could provide the relief sought. *Kaufman* v. *Newburgh Heights, supra.* The other is the situation in which the administrative remedy is unnecessarily onerous. *Burt Realty Corp.* v. *Columbus, supra.*

In the present case, the Austintown Township Zoning Ordinance did provide a variance procedure which could have afforded Willowcrest Land Co. the ultimate relief it sought (permission to construct apartment buildings on its property). Nothing in the record indicates that this procedure was unusually onerous. Nevertheless, Willowcrest did not attempt to secure a variance prior to instituting its declaratory judgment action. It, therefore, failed to exhaust an available administrative remedy. However, both the Court of Appeals and appellees err in viewing this failure as a jurisdictional defect. This court stated in paragraph one of the syllabus in *Kaufman* v. *Newburgh Heights, supra*, that:

"The doctrine of 'failure to exhaust administrative remedies available' may be a *defense* to an original action to review an action of an administrative officer only if interposed * * *." (Emphasis added.)

---

[3]Although *Lieux* involved a mandamus action, which was subject to dismissal on the ground that relator had a plain and adequate remedy at law, the above-quoted statement was not premised on that ground. The "fundamental principle of law that constitutional questions will not be decided until the necessity for their decision arises" is as applicable to a declaratory judgment action as it is to a mandamus action. Similarly, the present vitality of the statement is not lessened by the fact that *State, ex rel. Sibarco Corp.*, v. *Berea* (1966), 7 Ohio St. 2d 85, 218 N. E. 2d 428, has removed the availability of mandamus as a method of challenging the constitutionality of a zoning ordinance as it applies to a specfic parcel of realty.

Failure to exhaust administrative remedies is not a jurisdictional defect, and such a failure will not justify a collateral attack on an otherwise valid and final judgment. Failure to exhaust administrative remedies is an affirmative defense which must be timely asserted in an action or it is waived. Civ. R. 8(C) and 12(H).

II.

The tract of land which is the subject matter of this appeal was acquired by Willowcrest Land Co. in a series of separate conveyances. In two of these conveyances, each grantor transferred a 0.869-acre parcel to Willowcrest. These two parcels were contiguous and were located in the northern portion of the present 13-acre tract. Both deeds contained a restrictive covenant which provided:

"The lands described herein shall be used only in conjunction with the land south of this parcel for the purpose of subdividing into residential lots by recording as a plat. No building shall be erected on this parcel until said plat has been recorded at which time of recording this restriction shall become void."

Several of the appellees claim the protection of the covenants and allege that construction of apartment buildings would violate the deed restrictions. Both lower courts correctly rejected that allegation.

Appellees assert in their brief that "there can be no doubt that the grantors of the two (2) parcels containing the restrictive covenants fully intended to restrict any development on the parcels to single family residences in order to comport with their abutting property and the rest of the neighborhood." However, both the Court of Common Pleas and the Court of Appeals held that there was insufficient evidence to establish the actual circumstances and property use in the area at the time the covenants were executed. Those evidentiary findings will not be disturbed by this court, and hence appellees' assertion is untenable. The effect of the restrictive covenants in this case must be determined solely from their language.

Our legal system does not favor restrictions on the use of property. Therefore, as stated in paragraph two of

the syllabus in *Loblaw, Inc., v. Warren Plaza, Inc.* (1955), 163 Ohio St. 581, 127 N. E. 2d 754:

"The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are stricty construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate."

See, also, *Frederick* v. *Hay* (1922), 104 Ohio St. 292, 135 N. E. 535; *Hitz* v. *Flower* (1922), 104 Ohio St. 47, 135 N. E. 450; *Hunt* v. *Held* (1914), 90 Ohio St. 280, 107 N. E. 765. A specific example of this principle is the rule that a clause in a deed restricting the use of the property conveyed to "residential" purposes does not prohibit the erection of multi-family dwellings. *Arnoff* v. *Williams* (1916), 94 Ohio St. 145, 113 N. E. 661. Similarly, a restrictive covenant which states that the land conveyed "shall be used only in conjunction with the land south of this parcel for the purpose of subdividing into residential lots by recording as a plat" does not expressly prohibit the platting of the parcel and the land to the south into lots for use as the site of apartment buidings. If the grantors of the deeds which contained the restrictive covenants desired to limit development of the property affected by the restrictions to single-family residences, they should have done so in unambiguous language. This court is without power to rewrite the covenants.

In 1973, appellants recorded a plat which subdivided their property into two lots. The property will be used as the site of apartment buildings. Therefore, strictly construing the language of the restrictive covenants, recordation of the plat voided the restrictions.

For the reasons expressed in this opinion, appellees were not entitled to injunctive relief to prevent appellants from constructing multi-family dwellings on their property. Therefore, this court affirms that portion of the judgment of the Court of Appeals pertaining to the effect of the restrictive covenants.

This court reverses that portion of the judgment of

278

the Court of Appeals pertaining to the validity and effect of the 1971 declaratory judgment action. Further, that portion of the judgment of the Court of Appeals which restrained appellants from using their property in a manner contrary to the Residence R-2 zoning classification of Austintown Township is reversed, and the judgment of the Court of Common Pleas denying injunctive relief is reinstated.

*Judgment affirmed in part and reversed in part.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.