OPINION
{¶ 1} Appellant, city of Eastlake, appeals from the April 12, 2001 judgment entry of the Lake County Court of Common Pleas granting the motion for summary judgment of appellees, John Skonieczny ("Skonieczny") and Bonnie L. Horvath ("Horvath").
{¶ 2} In 1973, due to the high lake stages of Lake Erie, appellant was concerned about flooding along its shoreline; therefore, it requested that the United States Army Corps of Engineers ("the Army Corps of Engineers") assist appellant with the provision of emergency flood protection works. In order for the Army Corps of Engineers to proceed with this project, appellant obtained right of entry from thirty-two property owners along that section of the shore of Lake Erie and the east channel of the Chagrin River ("the easement"). This right of entry provided appellant, its assigns, agents and representatives with right of entry on the property owners' land for the location, construction, operation, maintenance, and removal of temporary emergency flood protection works. The property owners involved further agreed that neither they nor their heirs or assigns would erect any building or structure on the easement. Subsequent to the execution of this right of entry, the Army Corps of Engineers constructed a dike for the purpose of flood control.
{¶ 3} On June 10, 1986, appellant's city council passed resolution 1986-071, which assigned the 1973 right of entry to the Army Corps of Engineers for the purpose of dike maintenance and improvements. In conjunction with this resolution, appellant executed an assignment of the right of entry, granting the Army Corps of Engineers access over the easement for the location, construction, operation, maintenance, and removal of emergency flood protection works.
{¶ 4} The improvement project was completed by the Army Corps of Engineers in October 1986. In an undated letter, Colonel Daniel Clark of the Army Corps of Engineers ("Clark") informed Mayor Becker that the temporary flood project was completed on October 30, 1986, and that it was transferred to the city of Eastlake for maintenance and operation as of that date. Clark also stated that authority had expired for any further expenditures of federal funds for construction or additional improvements on the project. However, the letter did not expressly address the assignment of the right of entry, or the status of the specific easement at issue in this case.[1]
{¶ 5} In 1998, Horvath purchased Sublot 55, which was subject to the 1973 right of entry. Skonieczny later obtained a beneficial interest in Sublot 55, which Horvath holds in trust for him. In November 1998, Skonieczny filed an application with appellant for a building permit to construct a single-family dwelling on Sublot 55. The application was denied. However, Skonieczny received a letter dated April 16, 1999, from the Army Corps of Engineers indicating that it had no objection to his proposed construction.
{¶ 6} On June 4, 1999, Skonieczny, as the sole plaintiff, filed a complaint seeking a declaratory judgment to the effect that appellant had no right to preclude him from constructing a single-family dwelling on Sublot 55 because appellant had transferred all of its interest in the 1973 right of entry to the Army Corps of Engineers, which had no objection to Skonieczny's plans.
{¶ 7} On June 28, 1999, appellant filed a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction. Skonieczny filed a memorandum in opposition to appellant's motion on July 1, 1999. The trial court denied appellant's motion in an October 1, 1999 judgment entry.
{¶ 8} Skonieczny moved for summary judgment on September 20, 2000, arguing, in part, that appellant could not enforce the right of entry because it had assigned it to the Army Corps of Engineers. Appellant filed a brief in opposition to Skonieczny's motion on October 13, 2000.
{¶ 9} On October 16, 2000, appellant filed a motion to dismiss pursuant to Civ.R. 12(B)(1), Civ.R.12(B)(7) and Civ.R. 19, arguing that Skonieczny lacked standing to seek declaratory judgment because he did not have legal title to Sublot 55. Skonieczny then requested leave to file an amended complaint instanter because he had discovered that Sublot 55 was owned by his partner, Horvath, who, upon receipt of this information, had transferred beneficial title in Sublot 55 to Skonieczny pursuant to a trust agreement. Skonieczny's motion was granted, and an amended complaint was filed October 23, 2000, naming both Skonieczny and Horvath as plaintiffs.
{¶ 10} In its April 12, 2001 judgment entry, the trial court denied appellant's motion to dismiss and granted appellees' motion for summary judgment, in part, on the grounds that, in 1986, appellant had assigned all of its rights under the 1973 right of entry to the Army Corps of Engineers. In its judgment entry, the court stated: "[t]here is no evidence that [appellant] expressly retained any rights in [the 1973 right of entry]." On May 3, 2001, appellees filed a voluntary dismissal of all claims not related to appellant's right to enforce the 1973 right of entry.
{¶ 11} Appellant has filed a timely appeal of the April 12, 2001 judgment entry and makes the following two assignments of error:
 ASSIGNMENTS OF ERROR {¶ 12} "[1.] The trial court erred as a matter of law in denying [appellant's] unopposed motion to dismiss [Skonieczny`s] complaint for lack of subject matter jurisdiction.
 {¶ 13} "[2.] The trial court erred as a matter of law in holding that [appellant] had no interest in the right of entry after the assignment to the [Army Corps of Engineers]."
{¶ 14} In its first assignment of error, appellant contends that the trial court lacked jurisdiction in this matter because (1) necessary parties were not joined; and (2) the case presented a non-justiciable controversy consisting of political questions.
{¶ 15} Appellant posits that the other signatories to the 1973 right of entry as well as their heirs and assigns should have been made parties to this action. R.C. 2721.12 provides that when declaratory relief is sought, "all persons who have or claim any interest that would beaffected by the declaration shall be made parties to the action or proceeding." (Emphasis added.) The group of persons "affected" by a declaration does not include those who are merely practically affected.Driscoll v. Austintown Assoc. (1975), 42 Ohio St.2d 263, 273. Only those persons who are legally affected are proper parties to the lawsuit. Id. For example, the Eighth Appellate District has held that homeowners in a subdivision bound by a restrictive covenant that required membership in a club and the concomitant payment of fees to maintain a recreational facility were legally affected by a complaint for declaratory judgment requesting that the court determine whether membership in the club was mandatory for homeowners within the subdivision. Bretton Ridge HomeownersClub v. DeAngelis (1988), 51 Ohio App.3d 183, 185. However, in Driscoll,42 Ohio St.2d at 265, the Supreme Court of Ohio held that surrounding property owners were not legally affected by the outcome of a declaratory judgment action attacking the constitutionality of zoning regulation as it applied to a specific parcel of property; therefore, they were not necessary parties to the action.
{¶ 16} The Second Appellate District addressed this issue in Smithv. Rich (Sept. 10, 1979), 2d Dist. No. CA 6137, 1979 Ohio App.LEXIS 8546. In Smith at 13, the Montgomery County Board of County Commissioners argued that a declaratory judgment invalidating county zoning resolutions in their entirety legally affected all property owners in the 118,000 acres subject to that resolution. The Smith court concluded that the effect of voiding the resolutions on other property owners could not be determined until a specific case was presented to a proper court. Id. Therefore, the other property owners were not legally affected by the trial court's decision.
{¶ 17} Similarly, in the instant case, appellant did not present any evidential material to the trial court in support of its assertion that the other property owners subject to the right of entry would be legally affected by the trial court's decision. When appellant filed its brief in opposition to appellees' motion for summary judgment, it attached a petition signed by property owners "in the area of the Foresight dike and Galalina Boulevard", urging the mayor of appellant to take all measures necessary to obtain funding for the repair and maintenance of the dike. However, appellant did not adduce any evidence that these property owners are subject to the right of entry, and property owners not subject to the right of entry could not be legally affected by the resolution of appellees' complaint. Therefore, this petition did not support appellant's contention that the absence of necessary parties created a jurisdictional defect.
{¶ 18} Because appellant failed to show that the other property owners subject to the right of entry would be legally affected by the trial court's decision, appellant's argument that the trial court lacked jurisdiction over appellees' declaratory judgment action because of the absence of necessary parties is without merit.
{¶ 19} The second issue raised by appellant in connection with its first assignment of error is the justiciability of this matter. Appellant argues that this is a non-justiciable controversy because it involves the regulation of the health, safety, and welfare of city of Eastlake residents, which is a political question not appropriate for resolution by the judicial branch.
{¶ 20} "Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarassment from multifarious pronouncements by various departments on one question." Baker v. Carr (1962), 369 U.S. 186, 217.
{¶ 21} In Baker, the Supreme Court identified several categories of controversies in which political questions are frequently inherent: foreign relations; dates of duration of hostilities; validity of enactments; and, the status of Indian tribes. Id. at 211-216. However, even within these areas, not all issues or legal controversies are non-justiciable. The Baker court observed that while Congress had the power to determine whether Indians are recognized as a tribe, it could not arbitrarily denote a community as a tribe, and the courts would strike down any heedless extension of that label. Id. at 216-217.
{¶ 22} In United States v. Funmaker (C.A.7, 1993), 10 F.3d 1327, Funmaker, a member of the Wisconsin Winnebago Indian tribe was prosecuted for setting fire to a bingo hall. He argued that his prosecution was a non-justiciable controversy. Id. at 1332. The Seventh Circuit Court of Appeals held that while Congress has plenary power over Indian affairs, when Congress exercises that power by enacting a law of general applicability which applies to Indian tribes, the judiciary must exercise jurisdiction. Id. at 1333.
{¶ 23} In the matter sub judice, the trial court's role did not require it to determine how appellant should provide for the health, safety, and welfare of its residents. Nor does this court have any desire to usurp this authority from appellant. Rather, this case presents an issue of assignment interpretation: did appellant retain any of the rights granted to it in the 1973 right of entry subsequent to its assignment of that right of entry in 1986, to the Army Corps of Engineers? This matter is akin to issues that are frequently addressed by the judiciary: the appropriate application of zoning regulations; the interpretation of easements; and, the resolution of contract disputes. The issues addressed by the trial court in this case did not require it to determine how appellant should best provide flood protection for its residents. Rather, the trial court had to determine whether appellant had continuing rights to control the right of entry and prevent the construction of a residence on the easement. Therefore, the matter sub judice is not the type of non-justiciable controversy that could not be addressed by the trial court. Consequently, appellant's contention that this is a non-justiciable controversy is without merit. For the foregoing reasons, appellant's first assignment of error is not well taken.
{¶ 24} In its second assignment of error, appellant argues that the trial court erred in holding that it had no interest in the right of entry after it was assigned to the Army Corps of Engineers.
{¶ 25} The trial court, in its April 12, 2001 judgment entry, granted appellee's motion for summary judgment, holding that "[t]here is no genuine issue of material fact that Eastlake assigned its rights in the 1973 Right of Entry agreement to the United States in Eastlake Resolution 1986-071" and "[t]here is no evidence that Eastlake expressly retained any rights in this agreement."
{¶ 26} Civ.R. 56(C) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless * * * reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." In Osbornev. Lyles (1992), 63 Ohio St.3d 326, 333, quoting Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1, 2, the Supreme Court of Ohio noted that "`"(s)ummary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * *"'"
{¶ 27} Issues of contract interpretation and construction are questions of law, which are subject to de novo review on appeal. ShermanR. Smoot Co. of Ohio v. Ohio Dept. of Adm. Services (2000),136 Ohio App.3d 166, 172.
{¶ 28} The 1973 right of entry granted to appellant "right of entry in, on, over and across so much of the [easement] as is required for the location, construction, operation, maintenance and removal of temporary emergency flood protection works * * *; excepting therefrom and reserving unto the [individual property owners] * * * the existing dwellings and any other buildings now located on the premises * * *." The 1986 assignment of the right of entry contained virtually identical language granting the Army Corps of Engineers "right-of-entry in, on, over and across so much of the [easement] as is required for the location, construction, operation, maintenance and removal of emergency flood protection works, and access thereto, as may be necessary to meet the imminent emergency; excepting therefrom and reserving unto [the property owners] * * * the existing dwellings, if any, and any other buildings now located on the premises together with the land directly beneath the same, it being understood."
{¶ 29} Appellant insists that the 1986 assignment of the right of entry was a partial assignment. Section 326 of the Restatement of Contracts 2d states that a partial assignment is "an assignment of a part of a right, whether the part is specified as a fraction, as an amount, or otherwise, is operative as to that part to the same extent and in the same manner as if the part had been a separate right." Comment (b) to Section 326 provides that "[t]he distinguishing feature of a partial assignment is a manifestation of intention to make an immediate transfer of part but not all of the assignor's right, and to confer on the assignee a direct right against the obligor to the performance of that part." Here, the documents at issue do not indicate that appellant reserved any portion of its right of entry. Rather, the language of the 1986 assignment assigns to the Army Corps of Engineers all of the rights acquired by appellant in 1973. The express language of the relevant documents indicates that appellant assigned to the Army Corps of Engineers every right granted to it in the 1973 right of entry. Because appellant retained no unique rights separate and apart from those assigned to the Army Corps of Engineers, the 1986 assignment cannot be construed as a partial assignment.
{¶ 30} Appellant also suggests that responsibility for maintaining the dike was not assigned to the Army Corps of Engineers. However, this assertion is contradicted by Resolution No. 1986-071 of appellant's Council, which states that the 1973 right-of-way is "hereby assigned to the United States of America and/or the U.S. Army Corps of Engineers and/or their Contractors in order to proceed with Dike Foresightmaintenance and improvements." (Emphasis added.)
{¶ 31} Construing the evidence most strongly in appellant's favor, we conclude that because appellant totally assigned its right of entry to the Army Corps of Engineers, there is no merit in appellant's second assignment of error and its contention that the 1986 assignment was a partial assignment.
{¶ 32} For the foregoing reasons, the judgment entry of the Lake County Court of Common Pleas is hereby affirmed.
WILLIAM M. O'NEILL, J., JUDITH A. CHRISTLEY, J., concur.
[1] Appellant insists that it was responsible for maintenance of the dike; however, evidence of the maintenance undertaken by appellant is sparse at best. Attached to the affidavit of Bert Huffman, the service director for appellant, is a 1990 letter to the Army Corps of Engineers with photographs of maintenance performed on the dike. There is no indication as to the nature of the maintenance, who performed it, how often such maintenance projects were undertaken, or who provided the funding.