[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} This is an appeal by defendant-appellant, University Coffee House, Inc., d.b.a. Arabica, from a judgment of the Ohio Court of Claims, finding in favor of plaintiff-appellee, Kent State University ("KSU"), on its claim for breach of contract, and denying defendant's counterclaim for breach of contract, specific performance and an accounting.
 {¶ 2} This action arose out of a dispute over the terms of a lease agreement between KSU, as landlord, and defendant, as tenant, for the lease of space in KSU's Student Center ("Student Center"). On August 3, 2001, KSU filed a complaint for forcible entry and detainer against defendant in the Portage County Municipal Court, seeking a writ of restitution and damages for alleged breach of the lease agreement. Defendant filed an answer and a counterclaim, seeking an accounting and alleging claims for negligence, gross negligence, specific performance, fraud, and breach of contract. On September 4, 2001, defendant filed a petition to remove the case to the Court of Claims, which the trial court subsequently granted.
 {¶ 3} The Court of Claims conducted a trial beginning on May 28, 2002. On September 10, 2002, the Court of Claims rendered a decision, finding that defendant breached the lease, and awarded KSU damages in the amount of $37,189.33.
 {¶ 4} In its decision, the Court of Claims made the following factual findings. In March of 1994, KSU solicited bids from various food and beverage vendors to operate a new "Food Court" on the first floor of the Student Center, in an area known as "The Hub." Prior to 1994, The Hub consisted of only a Wendy's restaurant. At the time of the bidding, other food locations in the Student Center included a candy counter in a hallway on the first floor, a cafeteria on the second floor, a formal dining room (the Schwebel Room) on the third floor, and the "Rathskeller," located in the basement of the Student Center. The Rathskeller sold pizza and beer, and included a game room with pool tables.
 {¶ 5} The plans for the Food Court contemplated a maximum of eight fast food providers, each with a different main menu or product line. KSU's "Invitation To Bid" included a "request for proposals," which provided in part:
 {¶ 6} "Proposals for the installation and operation of Fast Food Court Shops, by established national firms or organizations with extensive experience in a fast food restaurant operation, in the Kent Student Center, Kent State University, Kent, Ohio possibly including but not limited to Shops for hamburgers, pizza, mexican/tacos, chicken, sub sandwiches/deli, oriental (chinese) food, ice cream/yogurt/donuts, pretzels, and coffee/pastry."
 {¶ 7} The specifications section of the Invitation to Bid stated in part:
 {¶ 8} "I. MISSION OF CONTRACT:
 {¶ 9} "Proposals are to be submitted for the installation and operation of Fast Food Court Shops by established national firms or organizations with extensive experience in a fast food restaurant operation. The resulting Court should offer one shop for each of a number of product lines.
 {¶ 10} "II. AREA:
 {¶ 11} "The west wall and partial north wall of the first floor Hub located in the Kent Student Center (See attachment #1). Approximately 100 square feet of storage space will be provided (at a minimum of $6.00 per sq. ft. per year) for each Contractor. This storage area is separate from the Food Court but nearby (see attachment #2). Proposals should indicate the Contractor's preferred Shop location (A through H). The final number of Shops, Shop locations, types of Shops and sizes of Shops will be the sole determination of the University.
 {¶ 12} "* * *
 {¶ 13} "IV. THE SELECTED CONTRACTOR MUST AGREE TO:
 {¶ 14} "* * *
 {¶ 15} "O. Provide the University with a proposed menu and a statement indicating the kinds of services to be provided, current portion sizes and prices for its operation and agree to post menu prices in a conspicuous place. Prices and menu items are to be the same as those offered and charged in similar operations at other locations. Once menus, prices and portion sizes have been established, any changes must be submitted to the Executive Director, Auxiliary Operations or designee before implementation. Competition between like products among Shops will be strongly discouraged.
 {¶ 16} "* * *
 {¶ 17} "VI. THE UNIVERSITY RESERVES THE RIGHT TO:
 {¶ 18} "* * *
 {¶ 19} "B. Contract for additional food operations whose main menu theme differs from that of existing Food Court Shops."
 {¶ 20} During a meeting held on April 18, 1994, Ronald Perkins, KSU's Assistant Director of Dining Services, stated that the Rathskeller would continue the use for which it had previously been open. Defendant was incorporated in 1994, and it subsequently obtained a franchise known as "Arabica," a specialty or gourmet coffee and pastry shop. Defendant submitted a bid proposal that was accepted by KSU on August 31, 1994, and the parties entered into a 10-year lease for one of the eight units at the Food Court. The "request for proposals" and other documents became part of the contract. KSU chose the following eight stores to be Food Court vendors: (1) McDonald's, (2) Mama Ilardo's Pizza, (3) Taco Bell, (4) Subway, (5) Mark Pi's, (6) Friendly's, (7) Hot Sam's Pretzels, and (8) Arabica Coffee.
 {¶ 21} Arabica opened for business in September of 1994, but sales were significantly lower than anticipated. In 1995, defendant's president spoke with Perkins about defendant's concerns that one of the other vendors, Hot Sam's, had begun selling flavored coffee. In May of 1995, KSU agreed to lower Arabica's base rent from $66,000 to $30,000. In August of 1996, KSU agreed to allow defendant to operate a coffee cart in Bowman Hall.
 {¶ 22} In April of 2000, KSU issued requests for proposals for additional food services for the Student Center, and all existing Food Court vendors received a copy of the requests. KSU subsequently converted the candy counter into a convenience store, known as the Kent Market. In January of 2001, "Jazzman's Cyber Café," ("Jazzman's"), a coffeehouse offering specialty coffees such as espresso and cappuccino, replaced the Rathskeller in the lower level of the Student Center. Two weeks before the opening of Jazzman's, the Kent Market began selling certain selections of Jazzman's coffee outside the Food Court area on the first floor.
 {¶ 23} In February and April of 2001, defendant's attorney met with representatives for KSU on various occasions to discuss defendant's claim that KSU was violating the agreement by allowing McDonald's to sell cappuccino and espresso, and by allowing the Kent Market to sell Jazzman's flavored coffees. Defendant's attorney suggested that KSU reduce defendant's rent due to the increased competition, but no agreement was reached. Defendant last paid rent on May 31, 2001.
 {¶ 24} The Court of Claims concluded that defendant failed to prove that the contract granted it the exclusive right to sell specialty coffee throughout the Student Center, and denied defendant's counterclaims for breach of contract, specific performance and an accounting. The court further found KSU had established that defendant breached the lease by failing to pay rent after May 31, 2001, and that KSU was entitled to damages in the amount of $37,189.33.
 {¶ 25} On appeal, defendant sets forth the following four assignments of error for review:
 {¶ 26} "[I.] After finding that University Coffeehouse had Exclusive market rights under the Lease, the Court's ruling that such exclusive right was restricted to a single room of the Student Center was against the manifest weight of the evidence.
 {¶ 27} "[II.] In determining the geographical scope of Appellant's right to be the only specialty coffee vendor, the Trial Court erred in applying a rule of law strictly construing Appellant's rights.
 {¶ 28} "[III.] The Trial court erred in repeatedly ruling against Parole [sic] evidence to explain ambiguity in the Lease.
 {¶ 29} "[IV.] After finding that Appellant had exclusive Market rights under the Lease, the Trial Court erred in incorrectly applying the Ohio strict construction rule to limit Appellant's market to one room inside of the Student Center."
 {¶ 30} Defendant's assignments of error are interrelated and will be considered together. Under these assignments of error, defendant argues that the trial court's decision limiting the market rights of defendant to the area of The Hub was against the manifest weight of the evidence, and that the court erred in applying a strict rule of construction in limiting defendant's market to that area. Defendant also argues that the court erred in failing to allow parol evidence to explain ambiguities in the agreement.
 {¶ 31} In The Toledo Group, Inc. v. Benton Industries, Inc. (1993), 87 Ohio App.3d 798, 805, the court held in part:
 {¶ 32} "The interpretation of a written contract is a matter of law for the court. * * * The purpose of contract construction is to effectuate the intent of the parties. * * * The intent of the parties is presumed to reside in the language they chose to employ in the agreement. * * * Common words appearing in the instrument will be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the contract." (Citations omitted.)
 {¶ 33} In the present case, the Court of Claims, noting that the contract specifically designates that the area for rent is one of eight shops located in The Hub on the first floor of the Student Center, concluded that defendant "had a right to be the only specialty coffee vendor in the Food Court of The Hub, but not the entire Student Center." The court, further citing contract language providing that "[c]ompetition between like products among Shops will be strongly discouraged," construed the word "Shops" to mean the shops located in the Food Court. The court also noted that language prohibiting KSU from leasing space in other areas of the Student Center for vendors of gourmet coffee "is absent from the lease."
 {¶ 34} As indicated under the facts, the Invitation to Bid contains a provision describing the "area" for the "Fast Food Court Shops" as "[t]he west wall and partial wall of the first floor Hub located in the Kent Student Center." Despite this language, defendant contends that the evidence supports the extension of defendant's market area to cover the entire Student Center. Assuming, without deciding, that language in the specifications providing that "[c]ompetition between like products among Shops will be strongly discouraged" is sufficient to constitute an exclusive-use provision, we agree with the Court of Claims that, based upon the clear language of the lease agreement, defendant has no express right to a market area beyond the Food Court shops located in The Hub; nor does the agreement attempt to place restrictions on KSU's ability to lease other areas of the Student Center to coffee vendors.
 {¶ 35} Defendant relies upon Pennsylvania case law to argue that the more modern view, as espoused by a dissenting opinion in Great A P Tea Co. v. Bailey (1966), 220 A.2d 1, is to abandon a strict construction of an agreement when it defeats the intent of the parties. The general rule in Ohio, however, requires that language of exclusive-use clauses should be narrowly construed, and all doubts should be resolved against a possible construction that would increase the restriction upon the use of real estate. Rite Aid of Ohio, Inc. v. Marc's Variety Store, Inc. (1994), 93 Ohio App.3d 407, 413, citing Loblaw, Inc. v. Warren Plaza, Inc. (1955), 163 Ohio St. 581. See, also, Driscoll v. Austintown Associates (1975), 42 Ohio St.2d 263, 276 ("Our legal system does not favor restrictions on the use of property"); Woodcreek Assn., Inc. v. Bingle (1991), 73 Ohio App.3d 506, 510.
 {¶ 36} As noted by the Court of Claims in the instant case, had defendant wanted the exclusive right to sell specialty coffee throughout the entire Student Center, it should have reserved that right in the express language of the contract. While sophisticated parties to an agreement may be free to place an exclusive-rights clause in a lease with the intent of restricting property use, we decline to depart from well-established Ohio law and imply such a provision. See Driscoll, supra, at 277 (if grantors of deeds which contained restrictive covenants desired to limit development of the property affected by restrictions to single-family residences, they should have done so in unambiguous language; "[t]his court is without power to rewrite the covenants").
 {¶ 37} Defendant also relies upon the fact that an enclosure, referred to as "Kent Student Center traffic count information," was attached to the Invitation to Bid. Defendant argues that the traffic counts encompassed all doors in the Student Center, and were presented to defendant and the other vendors so they could determine the market and make their rent proposals. Defendant maintains that the inclusion of the traffic counts supports the extension of its market rights to include the entire Student Center.
 {¶ 38} We find unpersuasive defendant's reliance upon the traffic counts as evidence that it bargained for the exclusive right to sell coffee throughout the entire Student Center. Rather, we agree with KSU's contention that, when read in context, the traffic counts were included in the Invitation to Bid for informational purposes. Thus, we do not find that the traffic counts contradict the plain language of the lease defining the area of the Food Court as The Hub. Further, finding the contract clear and unambiguous, we find no error on the part of the trial court in failing to admit parol evidence on this issue. See Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638 ("If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity").
 {¶ 39} Based upon the foregoing, defendant's four assignments of error are overruled, and the judgment of the Ohio Court of Claims is hereby affirmed.
Judgment affirmed.
TYACK and BOWMAN, JJ., concur.