JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellants, the City of Warrensville Heights, Mayor of Warrensville Heights, Marcia Fudge, and Warrensville Heights Fire Chief Stanley Martin (collectively "Appellants") appeal the monetary damages and injunctive relief awarded to plaintiff-appellee, firefighter Ellita Vedder ("Vedder") in the Cuyahoga County Common Pleas Court. For the reasons that follow, we affirm in part and reverse in part.
 {¶ 2} The record reveals that Vedder is a female firefighter employed by the Warrensville Heights Fire Department ("WHFD"). Vedder finished second in her class at fire school and achieved the sixth highest score out of 300 applicants on the civil service examination for becoming a Warrensville Heights firefighter. In addition to her employment with WHFD, Vedder is a captain on the Chagrin Falls Fire Department in charge of the emergency medical service, a certified paramedic, a fire service instructor, a HazMet specialist, a heavy rescue instructor, a paramedic instructor and a registered nurse.
 {¶ 3} On January 20, 2000, Vedder took a written civil service examination in an effort to be eligible for promotion to the position of lieutenant in the WHFD. Vedder scored the third highest on the examination and was ranked third on the eligibility list. In order to pass the examination the test taker must have scored at least 70%, with additional credit being added to the score for military service and seniority. Out of the 17 test takers, Vedder being the only female, 10 failed to achieve a score of at least 70%. The 7 remaining eligible firefighters were then ranked based upon their score.
 {¶ 4} Rule XVI, Section 9 of the Civil Service Commission rules provides that the appointing authority must promote one of the top three candidates on the eligibility list. This is more commonly known as the 1-in-3 rule. Former WHFD Chief William Taylor testified that the city had never deviated from the 1-in-3 rule during his 40 year tenure with the WHFD.
 {¶ 5} In February, 2000, two lieutenant positions became available for promotion. Mayor Fudge, who had been recently elected in January, 2000, left the promotion decision to the then Chief Taylor who recommended that the firefighters ranked first and second on the eligibility list be promoted to lieutenant. Mayor Fudge declined the opportunity to interview the firefighters before their promotion.
 {¶ 6} On July 17, 2000 Chief Taylor resigned and Mayor Fudge appointed Chief Martin.[1] On August 17, 2000, at the request of Chief Martin, the Civil Service Commission met with Chief Martin to discuss changes in the Civil Service Commission rules. Chief Martin requested the following changes: (1) an increase in the seniority requirements for eligibility to take a promotional exam for the position of lieutenant from three years in grade to eight years total experience; and (2) a decrease in the weight of the written examination to 50% and the institution of an oral interview/examination constituting 50% of the grade.
 {¶ 7} The commission agreed to the seniority requirement change but rather than changing the weight of the examination and adding an interview component, the commission changed the 1-in-3 rule to a 1-in-10 rule. Subsequently, the city law department drafted new Civil Service Commission rules in accordance with the changes requested by the commission. However, no action was taken by the commission to adopt the new rules or amend the Civil Service Rules to include these changes. Thus, although the changes were approved they did not become effective.
 {¶ 8} When a third lieutenant position became available, Mayor Fudge and Chief Martin interviewed each of the 7 firefighters on the list. In addition to the oral component, the firefighters were requested to provide an updated resume and a written response to an essay question. Based on this process, Mayor Fudge did not promote Vedder, who was now ranked first on the eligibility list, to the position. Rather, she bypassed Vedder, and two other males ranked next on the list, and promoted the sixth ranked firefighter Thomas Witucky ("Witucky"), whom she believed to be the most qualified candidate for the position.
 {¶ 9} Vedder filed her action against the Appellants on April 4, 2001. In Count I, Vedder sought injunctive relief in the form of promotion to lieutenant by alleging violation of the Ohio Constitution, the city charter, and the rules and regulations of the city's civil services commission. In Count II, Vedder claimed gender discrimination in violation of R.C. 4112.01, 4112.02[2] and 4112.99[3].
 {¶ 10} On January 7, 2002, the trial court denied the Appellants' motion to dismiss Count I of the complaint. The trial court ordered bifurcation and Count I was tried before the trial court without a jury. On January 15, 2002, the trial court ruled in favor of Vedder and ordered the Appellants to promote Vedder to lieutenant, to be effective as of February 28, 2001. Count II was tried before a jury and on January 7, 2002, the jury found in favor of Vedder and awarded her compensatory damages in the amount of $40,000. The jury found that Mayor Fudge and Chief Martin had acted with malice and/or a conscious disregard for Vedder's rights and awarded punitive damages against Mayor Fudge and Chief Martin, in their personal capacities, in the amount of $45,000 each, as well as attorney fees and costs.
 {¶ 11} On February 7, 2002, this court dismissed the Appellants' first appeal based on lack of a final appealable order because the amount of attorneys fees remained pending.[4] On February 26, 2002, the trial court entered judgment for Vedder to recover attorneys fees from Mayor Fudge and WHFD Chief Martin, jointly and severally, in the amount of $56,375, plus $6,598.95 in costs.
 {¶ 12} The Appellants submit seven assignments of error for our review, which we address in order.
 {¶ 13} "I. The trial court erred in denying appellants' motion to dismiss count I of the complaint, as the trial court plainly lacked subject matter jurisdiction to entertain the claims contained therein and the appellee failed to exhaust her administrative remedies."
 {¶ 14} Our review of the trial court's denial of the Appellants' Civ.R. 12(B)(1) motion to dismiss for lack of jurisdiction over the subject matter is de novo. Travis v. Thompson (June 21, 2001), Cuyahoga App. No. 78384. Initially, we note that subject matter jurisdiction is a court's power to hear and decide a case on the merits and does not relate to the rights of the parties. Jones v. Suster (1998), 84 Ohio St.3d 70,75. See also, Travis v. Thompson, supra.
 {¶ 15} "The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock, 42 Ohio St.3d 77,80. "The trial court is not confined to the allegations of the complaint when determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." Southgate Dev. Corp. v. Columbia Gas Transm. Corp. (1976),48 Ohio St.2d 211, paragraph one of the syllabus.
 {¶ 16} In Jones v. Village of Chagrin Falls (1997),77 Ohio St.3d 456, syllabus, the court held: "The doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained. (Driscoll v. AustintownAssoc. [1975], 42 Ohio St.2d 263, 71 Ohio Op.2d 247, 328 N.E.2d 395, clarified and followed.)" Thus the trial court had subject matter jurisdiction over the instant case, however, the doctrine of exhaustion of administrative remedies remained an affirmative defense, which was raised by Appellants.
 {¶ 17} Appellants challenge the denial of their motion to dismiss Count I of Vedder's complaint on the basis that Vedder was required to appeal any discrimination to the Civil Service Commission within 10 days and that she did not exhaust available administrative remedies. Appellants rely on Rule IX, Section 5, Suspensions and Removals, of the City of Warrensville Heights Rules and Regulations of the Civil Service Commission ("Civil Service Rules"), which provides in part:
 {¶ 18} "Any employee in the classified service who is so reduced, laid off, suspended for a period longer than thirty days, discharged, or otherwise discriminated against by the appointing authority, may appeal to the Civil Service Commission within ten days from and after the effective date of such reduction, layoff, suspension for a period longer than thirty days, discharge or other discrimination by the appointing authority. Any such appeal shall be made by filing with the Commission within said time, a written statement that he appeals from such order, describing the same. * * *." (Emphasis added.)
 {¶ 19} Appellants argue that Vedder did not exhaust her available administrative remedies under the Civil Service Rules.[5] Vedder did not appeal to the Civil Service Commission and instead, filed her direct action against the Appellants on April 4, 2001.
 {¶ 20} Vedder argues that Civil Service Rule XVI, Section 9, requires the appointing authority to promote one of the top three candidates on the eligibility list. Civil Service Rule XVI, Section 9, provides in part:
 {¶ 21} "When an examination for promotion has been completed, the Commission shall certify to the appointing authority the names and addresses of the three candidates standing highest on the eligible list for such promotion and the appointing authority shall fill such position by appointment of one of the three persons certified to him within fourteen days after such certification. * * *."
 {¶ 22} In light of the failure of Mayor Fudge and Chief Martin to promote her to the position of lieutenant, in accordance with the Civil Service Rules, Vedder commenced her lawsuit against Appellants.
 {¶ 23} Civil Service Rule IV, Section 5 sets forth the appeal procedure for, and is titled, "Suspensions and Removals." Appellants stretch to rely on the language "other discrimination" for their proposition that Vedder was required to appeal to the Civil Service Commission in order to exhaust available administrative remedies. We find no requirement within the Civil Service Rules that Vedder was obligated to file an appeal with the Civil Service Commission prior to filing her gender discrimination lawsuit in the court of common pleas.
 {¶ 24} Although not a discrimination case, in East ClevelandFirefighters, Local 500 v. Civil Service Commission of East Cleveland
(Dec. 19, 2000), Cuyahoga App. No. 77367, we reached a similar conclusion and found that nothing within the East Cleveland civil service rules allowed a person to contest the alleged unlawful promotion of a firefighter and that there were no administrative remedies available to exhaust. Id. at 24.
 {¶ 25} Vedder was not suspended, removed, discharged, laid off, reduced or otherwise discriminated against in a disciplinary manner. Rather, Vedder was passed over for promotion in clear contravention of the effective Civil Service Rules. Rather than appoint one of the top three ranked firefighters on the eligibility list as required, Appellants promoted the sixth ranked firefighter.
 {¶ 26} Appellants rely on McNea v. City of Cleveland (1991),78 Ohio App.3d 123, wherein we held that the secretary of police failed to exhaust his administrative remedies by filing an appeal with the civil service commission for his removal without a hearing. We distinguishMcNea, as the decision is based upon a disciplinary action for which the civil service rules provided an administrative remedy. Here, Vedder was not removed or otherwise disciplined.
 {¶ 27} Alternatively, Appellants argue that Vedder's complaint is time barred by her failure to file an appeal within 30 days as required by R.C. 2505.07.
 {¶ 28} R.C. 2505.07 provides:
 {¶ 29} "After the entry of a final order of an administrative officer, agency, board, department, tribunal, commission, or other instrumentality, the period of time within which the appeal shall be perfected, unless otherwise provided by law, is thirty days."
 {¶ 30} Appellants would like this court to barr Vedder's action based on her failure to file her complaint within 30 days of March 1, 2001, the date on which Witucky was promoted. However, Witucky's promotion does not amount to a final order of an administrative board, or the Civil Service Commission, thus, R.C. 2505.07 is not applicable here.
 {¶ 31} Appellants' first assignment of error is overruled.
 {¶ 32} "II. The trial court erred by awarding injunctive relief to appellee when she had available to her an adequate remedy at law."
 {¶ 33} Appellants argue that Vedder was precluded from seeking injunctive relief on the basis that R.C. 2506.01 provides an adequate remedy at law. The injunctive relief awarded by the trial court, and on which this assignment of error is based, is the promotion of Vedder to the rank of lieutenant in the WHFD. The Appellants rely on Rodgers v.Rocky River Civil Service Commission (Oct. 12, 1995), Cuyahoga App. No. 68625, wherein this court found that R.C. 2506.01 provided a firefighter with an adequate remedy at law and he was not entitled to injunctive relief.
 {¶ 34} R.C. 2506.01, appeal from decisions of any agency of any political subdivision, provides:
 {¶ 35} "Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505 of the Revised Code, except as modified by this chapter.
 {¶ 36} "The appeal provided in this chapter is in addition to any other remedy of appeal provided by law.
 {¶ 37} "A `final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding."
 {¶ 38} However, Rodgers is distinguishable from the instance case. Here, Vedder did not have the adequate remedy of an appeals process set forth in R.C. 2506.01, as the Civil Service Commission had not made a final order, adjudication or decision from which to appeal. In Rodgers, the first ranked firefighter on the eligibility list was promoted to captain as opposed to the firefighter-appellant who was ranked second. It is unclear from Rodgers the exact basis of the appellant's claim or the content of the civil service rules before the court. Here, the top three eligible firefighters were bypassed, in contravention of the Civil Service Commission's 1-in-3 rule and the sixth ranked firefighter was ultimately promoted to lieutenant. Regardless, the appellant in Rodgers
received a hearing before the civil service commission from which he had the opportunity to appeal pursuant to R.C. 2506.01.
 {¶ 39} Appellants also argue that whether an adequate remedy exists, need not be reached where the lower court lacked jurisdiction. See Fenwick v. Finkbeiner (1995), 72 Ohio St.3d 457. This argument is moot as we have previously found that the trial court had subject matter jurisdiction of this case and that Vedder was not required to appeal to the Civil Service Commission under the doctrine of exhaustion of administrative remedies.
 {¶ 40} The Appellants' second assignment of error is overruled.
 {¶ 41} "III. The trial court erred by denying the appellant's motion for directed verdict with regard to sex discrimination."
 {¶ 42} Civ.R. 50(A) governs the granting of a motion for a directed verdict and provides in pertinent part as follows:
 {¶ 43} "(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 44} A motion for directed verdict raises a legal question as to the sufficiency of the evidence to take the case to a jury and resolving the motion does not entail weighing the evidence or determining the credibility of the witnesses. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68-69. The motion is properly granted if, after construing the evidence in the light most favorable to the nonmoving party, reasonable minds could only find in favor of the movant on a determinative issue. Gliner v. Saint-Gobain Norton Indus. Ceramics Corp.
(2000), 89 Ohio St.3d 414, 415. Thus, it is axiomatic that the trial court must consider all of the evidence presented by the nonmoving party in order to determine whether to grant the motion.
 {¶ 45} We generally apply federal case law interpreting Title 42 U.S. Code to matters involving alleged violations of R.C. 4112. LittleForest Med. Ctr. v. Ohio Civ. Rights Comm. (1991), 61 Ohio St.3d 607,609-610; Plumbers Steamfitters Joint Apprenticeship Commt. v. OhioCivil Rights Comm. (1981), 66 Ohio St.2d 192, 196.
 {¶ 46} In determining whether the trial court correctly denied the Appellants' motion for directed verdict on Vedder's claim for sex discrimination, we employ the burden-shifting analysis set forth inMcDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817. SeeStepic v. Penton Media, Inc. (Dec. 14, 2000), Cuyahoga App. Nos. 77318, 77737.
 {¶ 47} The Court in McDonnell Douglas Corp., supra, established the framework in discriminatory treatment cases for allocation of burdens and the order of presentation of proof, as follows: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejections. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 252-253, 101 S.Ct. 1089
(citations omitted).
 {¶ 48} In order to set forth a prima facia case of disparate treatment, Vedder must "prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Texas Dept. of Community Affairs, supra, at 253. The Appellants concede that Vedder established a prima facie case of discrimination, but contend that they articulated legitimate, nondiscriminatory reasons for the failure to promote Vedder.
 {¶ 49} Appellants claim that Mayor Fudge acknowledged that the Civil Service Rules require that she appoint one of the top three candidates from the eligibility list, but admitted that she failed to do so. Mayor Fudge denied that she deviated from the procedure because interviews had historically been conducted. Her reasons for promoting Witucky included his strong commitment to the community coupled with his years of seniority and respect from the other members of the WHFD. Further, Mayor Fudge went on to state that she made a mistake but did not do it to hurt any individual and that she treats everyone fairly.
 {¶ 50} Having set forth a nondiscriminatory reason for failing to follow the 1-in-3 rule, the burden shifts back to Vedder, who retains the ultimate burden of proving that she was intentionally discriminated against by Appellants. See Brubaker-Schaub v. The Geon Co., Cuyahoga App. No. 75694, 2001-Ohio-4118.
 {¶ 51} "The discriminatory intent necessary for the plaintiff's case may be proved directly by evidence, of any nature, showing that an employer more likely than not was motivated by discriminatory intent.Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, syllabus at: para. 1. Discriminatory intent may also be proved indirectly by showing that the employee was a member of a protected class of persons, was qualified for the position, and was treated differently from similarly situated employees who were not members of the class. Such a showing serves to eliminate the most common nondiscriminatory reasons for the employer's action: lack of qualifications or the absence of a vacancy. Mauzy, supra, at 583." Brubaker-Schaub, supra, at 13-14.
 {¶ 52} In this instance, defendants clearly articulated a non-discriminatory basis for failing to promote Vedder. It was then incumbent upon Vedder to produce sufficient evidence from which the jury may reasonably reject the Appellants' explanation. Vedder presented the testimony of former Fire Chief Taylor who stated that during the 40 years he was employed by the WHFD, the city never deviated from the 1-in-3 rule. Vedder stated that she was not fairly considered; that she was discriminated against based on her sex because Appellants failed to promote her. As evidence of this, Vedder points out that in the prior two lieutenant promotions, the two males above her on the list were promoted without interviews and when the third position became available the rules changed for her. Vedder stated that she was first on the eligibility list and the most qualified candidate, however, Mayor Fudge promoted a male in violation of the Civil Service Rules.
 {¶ 53} The trial court denied the Appellants' motion for directed verdict stating,
 {¶ 54} "Well, there was evidence from which a reasonable trier of fact could find there was discriminatory motive and purpose, the fire chief going and trying to get the rules changed, the mayor expanding the list from three to six or seven. All of a sudden there's interviews for these people when there was not for the most recent two candidates, who were men. There is some. That's what I would cite in answer. Remember you can only win this motion if there is no evidence for a reasonable trier of fact.
 {¶ 55} "* * *
 {¶ 56} "Well, there is some evidence. Once again, when a woman stands to be promoted, the rules are changing. The fire chief is running to the Civil Service Commission to change the rules. There is evidence from which a reasonable trier of fact could find a discriminatory purpose or motive. I don't know that they will, but there is some evidence."
 {¶ 57} Without weighing the evidence or the credibility of the witnesses, we find that Vedder set forth sufficient evidence to take her sex discrimination case to a jury. The trial court properly denied Appellants' motion for directed verdict as Vedder set forth sufficient evidence that the articulated reasons for failing to promote her were merely a pretext for discrimination. There is sufficient evidence that Vedder was a member of a protected class of persons, was qualified for the lieutenant position, and was treated differently from similarly situated male employees. Accordingly, the Appellants' third assignment of error is overruled.
 {¶ 58} "IV. The trial court's judgment in favor of appellant [sic] with regard to sex discrimination was against the manifest weight of the evidence."
 {¶ 59} In this assignment of error, the Appellants argue that the jury lost its way based on the evidence that the Appellants violated the Civil Service Rules. Appellants argue that the fact that there was a violation does not necessarily mean that it was motivated by sex or gender discrimination.
 {¶ 60} In determining whether a judgment is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citingTibbs v. Floridan (1982), 457 U.S. 31, 102 S.Ct. 2211. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10.
 {¶ 61} As discussed above, the evidence illustrates that Vedder was bypassed for promotion. Although she ranked first on the eligibility list, none of the top three candidates were appointed. The two most recent promotions to the position of lieutenant were made without interviews, however, Vedder was not only interviewed but requested to provide the additional documentation of a response to an essay question and her resume. Mayor Fudge admitted that although she had read the Civil Service Rules, she did not promote one of the top three candidates, thereby violating those rules. Within one month after his appointment, Chief Martin met with the Civil Service Commission and requested changes to the promotional examination requirements. These changes would, in effect, prohibit Vedder from taking a promotional examination for some years, based on her seniority level, and decrease the weight of the written examination by requiring an oral component. The appointment then took place as if these changes had been adopted, as an interview was conducted and the sixth candidate on the list was promoted, rather than one of the top three. While Witucky may be a highly qualified firefighter, commendably involved in his community and deserving of the promotion, based on the Civil Service Rules in effect, he was not an eligible candidate for this promotion based on the 1-in-3 rule.
 {¶ 62} Where a judgment is supported by competent and credible evidence going to all the essential elements of the case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. After carefully reviewing the record and weighing the evidence and all reasonable inferences, we find competent and credible evidence that Vedder was discriminated against on the basis of her sex and cannot say that the jury lost its way in so finding. Thus, we overrule the Appellants' fourth assignment of error.
 {¶ 63} We review the Appellants' fifth and sixth interrelated assignments of error together.
 {¶ 64} "V. The trial court erred by denying the appellant's motion for directed verdict with regard to punitive damages."
 {¶ 65} "VI. The trial court's judgment in favor of appellant with regard to punitive damages was against the manifest weight of the evidence."
 {¶ 66} As set forth above, Civ.R. 50(A) requires that the trial court construe the evidence most strongly in favor of the nonmoving party and decide whether, on a determinative issue, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party.
 {¶ 67} The Appellants argue that Vedder failed to present evidence that Mayor Fudge and Chief Martin acted with actual malice. We agree.
 {¶ 68} R.C. 4112.99 authorizes an award of punitive damages upon evidence of actual malice in civil employment discrimination actions brought pursuant to the statute. Rice v. CertainTeed Corp. (1999),84 Ohio St.3d 417; see also Stepic v. Penton Media, Inc. (Dec. 14, 2000), Cuyahoga App. Nos. 77318, 77737; Pelletier v. Rumpke ContainerServ. (2002), 142 Ohio App.3d 54; Asp v. Ohio Med. Transp. (Jun. 29, 1999), Franklin App. No. 98AP-1063. The syllabus of Preston v. Murty
(1987), 32 Ohio St.3d 334, defines actual malice as:
 {¶ 69} "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."
 {¶ 70} Chief Martin testified that he believed the changes in the Civil Service Rules that he requested would not have affected the promotional examination and eligibility list at issue herein and would apply only to future examinations and lists. Chief Martin testified that he believed Vedder was not the best-qualified candidate. We note that Chief Martin was not the appointing authority and both he and Mayor Fudge testified that he did not advise Mayor Fudge as to her selection.
 {¶ 71} Vedder testified that she believed she was discriminated against on the basis of her gender but did not testify as to evidence of actual malice. She testified that she did not personally witness any bias towards her sex during the interview with Mayor Fudge and Chief Martin. Vedder testified that Mayor Fudge acted with malice towards her by violating the Civil Service Rules, failing to promote her and by promoting Witucky who was not an eligible candidate. Vedder testified that Chief Martin acted with malice by intentionally holding a special meeting with the Civil Service Commission to change the rules in order to prevent her from being promoted.
 {¶ 72} Civil Service Rule XVI, Section 9, provides in part:
 {¶ 73} "When an examination for promotion has been completed, the Commission shall certify to the appointing authority the names and addresses of the three candidates standing highest on the eligible list for such promotion and the appointing authority shall fill such position by appointment of one of the three persons certified to him within fourteen days after such certification. * * *."
 {¶ 74} Mayor Fudge did not testify that she knowingly violated the Civil Service Rules, in fact, she stated that she was familiar with the Civil Service Rules, that they are binding, and agreed that Civil Rule XVI, Section 9 requires that she appoint one of the top three candidates. Mayor Fudge conceded that she did not appoint one of the top three candidates. Mayor Fudge testified that she determined the top three in her mind as Witucky, Vedder and Szalay. Mayor Fudge admitted her mistake in not following the Civil Service Rules but claimed that she was just following the procedure the way it had always been done in the past.[6]
 {¶ 75} The trial court denied the motion for directed verdict ruling that there was evidence of reckless disregard relative to the punitive damages claim. Counsel for Vedder specifically stated during the hearing on the directed verdict motion that she was not arguing that actual malice existed, rather she argued punitive damages were appropriate because Mayor Fudge and Chief Martin acted with reckless disregard. However, the Rice court requires a showing of actual malice, not the lesser standard of reckless disregard. Further, "conscious disregard" and reckless disregard are not to be used interchangeably as amounting to the same standard. As this court stated in Ferritto v. Olde Co. (1989), 62 Ohio App.3d 582, 590, "conscious disregard" requires a greater showing of intent than does the reckless disregard standard.
 {¶ 76} Further, the award of punitive damages is against the manifest weight of the evidence. Where a judgment is supported by competent and credible evidence going to all the essential elements of the case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. We find that the record lacks competent and credible evidence that Mayor Fudge and Chief Martin acted with actual malice which is an element necessary for the award of punitive damages. Thus, we sustain the Appellants' fifth and sixth assignments of error.
 {¶ 77} "VII. The trial court committed reversible error by sustaining objections to an entire line of questioning during the cross-examination of both appellee and her expert, Kevin Prendergast."
 {¶ 78} On cross-examination of Vedder's expert witness, Kevin Prendergast, Appellants' counsel attempted to pursue a line of questioning on Vedder's failure to follow the appeal process set forth in Civil Service Rule IX, Section 5. Appellants argue that the trial court erred when it sustained the objection to this line of questioning because the Appellants were entitled to test the expert's credibility. On cross-examination of Vedder, the Appellants once again attempted to question along this issue and the court ruled it was irrelevant based on its denial of Appellants' motion to dismiss. We agree.
 {¶ 79} "The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion. Statev. Lane (1976), 49 Ohio St.2d 77, 358 N.E.2d 1081; State v. Bayless
(1976), 48 Ohio St.2d 73, 357 N.E.2d 1035; Smith v. State (1925),125 Ohio St. 137, 180 N.E. 695; Lima v. Freeman (1971), 27 Ohio App.2d 72,272 N.E.2d 637." O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163.
 {¶ 80} At trial, Prendergast, the general counsel for the Civil Service Employees Association, testified that after reviewing the Warrensville Heights Charter and the Civil Service Rules, Mayor Fudge violated both by appointing Witucky to lieutenant rather than one of the top three candidates, including Vedder. The Appellants' counsel then cross-examined Prendergast regarding the Civil Service Rule IX, Section 5, Suspensions and Removals. Prendergast testified that he was very familiar with suspensions and removals in the civil service. At this time, the court sustained the objection of Vedder's counsel and a discussion was held off the record at sidebar.
 {¶ 81} Evid.R. 611(B) provides that "cross-examination shall be permitted on all relevant matters and matters affecting credibility." In reviewing the trial court's denial of Appellants' motion to dismiss, we affirmed its ruling as discussed in the prior assignments of error. Vedder was not disciplined and, therefore, was not required to follow the disciplinary action appeals process dictated in Civil Service Rule IX, Section 5. The trial court ruled this line of questioning irrelevant and under these circumstances, we do not find a clear and prejudicial abuse of discretion. Accordingly, the Appellants' seventh assignment of error is overruled.
Judgment is affirmed in part and reversed in part.
It is ordered that appellee and appellants split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.
[1] During his 21 year employment with WHFD, Chief Martin previously failed the promotional examination for lieutenant on three occasions. The position of fire chief is not governed by the Civil Service Commission and it is an appointed position by the mayor.
[2] {¶ a} R.C. 4112.02 provides: "It shall be an unlawful discriminatory practice:
 {¶ b} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
[3] {¶ a} R.C. 4112.99 Civil remedies for violation.
 {¶ b} "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."
[4] Appellate case no. 80796.
[5] We note that neither the trial court nor this court has been asked to review grievance procedures within a collective bargaining agreement.
[6] Mayor Fudge testified Wendel Marlow, a member of the Civil Service Commission, informed her that he would provide her with a list of candidates for her to interview and that she should then make her selection.